CARROLL COUNTY v. RUGGLES ET AL.

1. **County Treasurer:** RE-ELECTION: APPROVAL OF BOND: CODE, § 690. Section 690 of the Code, requiring the board of supervisors, before approving the bond of a re-elected county treasurer, to indorse on the bond the fact that the officer has fully accounted for and produced all funds and property before that time under his control as such officer, is directory merely, (*Boone Co. v. Jones*, 699,) and a failure so to do does not invalidate the bond as against the sureties therein.

2. ————: BOND: CONDITIONAL SIGNATURES OF SURETIES: CONDITION BROKEN: LIABILITY. Where a county treasurer elect procured the signatures of the sureties on his bond upon the promise that he would procure the signatures of other named persons, which he failed to do, and the bond, when presented to the board of supervisors for approval, was complete in every respect, and in the usual and proper form, except that the name of one of the sureties was not written in the body of the bond, and the board had no notice that the sureties had signed it conditionally, *held* that the sureties could not escape liability on that ground. (See opinion for a discussion of the subject upon principle and authority by ROTHROCK, J.)

3. ————: ————: ————: EVIDENCE. In an action against the sureties in such case, *held* that evidence of the intention of the sureties in signing the bond was properly excluded, since it was not claimed that the approving board had any knowledge of such intention.

4. **Practice on Appeal:** ERRORS MUST APPEAR OF RECORD. This court cannot reverse a judgment for an alleged error which does not affirmatively appear in the record.

*Appeal from Carroll Circuit Court.*

MONDAY, JUNE 21.

THIS is an action at law upon the official bond of W. R.

Ruggles, late treasurer of Carroll county, to recover some $24,000 of public money which it is alleged said Ruggles failed to account for and pay over to his successor in office. There was a trial to the court without a jury, and a judgment for the plaintiff.   Defendants appeal.

*George W. Paine* and *M. W. Beach*, for appellants.

*F. M. Powers* and *I. J. McDuffie*, for appellee.

ROTHROCK, J.—I.   W. R. Ruggles was elected treasurer of Carroll county at the general election in the year 1881. He was re-elected at the general election in 1883, and the bond upon which this suit is brought was approved by the board of supervisors at their meeting in January, 1884.   In July, 1884, Ruggles absconded, and it was found that he was a defaulter in the sum of about $24,000.   There are various defenses pleaded by the sureties upon the bond, which we will proceed to consider.   Some of them may properly be disposed of in a very brief manner.

The defendant E. Evans pleaded that he did not sign the bond, and that, as to him, it was a forgery.   The court found against him upon this issue.   It is sufficient to say that the finding of the court is amply sustained by the evidence.

II.   It is claimed that the sureties are not liable, because there was a deficiency in the office of some seven or eight thousand dollars when the bond sued on was approved, and said shortage was not afterwards made good.   It is claimed that the sureties are not, in any event, liable for the amount of the defalcation up to the time of the approval of the bond, upon the well established principle that sureties on official bonds are not liable for prior delinquencies of their principal.   In our opinion, the court was warranted in finding from the evidence that at the semi-annual settlement, made in June, 1884, there was no delinquency, but that the full amount of money with which the treasury was properly chargeable was in the treasury, in cash.   It is true, counsel

Carroll County v. Ruggles et al.

for the defendants strenuously insist that no proper settlement was made, and that checks and drafts were counted as money. If this were a trial anew in this court, upon the evidence, it might be a question of some importance to determine, from the weight of the evidence, whether the actual amount in money was in the treasury at said settlement. But that the evidence fairly supports the finding of the court is too plain to admit of discussion.

It is further claimed, in this connection, that there was no proper settlement made with the treasurer for the first term of office, and before the approval of the bond in suit, and that there was no certificate to that effect indorsed upon the bond, as required by section 690 of the Code. If we are correct in the belief that the court was authorized in finding from the evidence that there was no deficiency or defalcation at the settlement and counting of the funds in June, 1884, the burden of proof was on the defendants to show that there was a deficiency when the bond was approved. Whether this would avail them as a defense may admit of some question. But we think the court was also authorized to find from the evidence that it did not appear that Ruggles, the treasurer, was short in his accounts when the bond was approved, and we have held that the indorsement upon the bond required by the section of the Code above cited is merely a directory provision of the statute. *Boone Co. v. Jones*, 54 Iowa, 699.

1. COUNTY treasurer: re-election: approval of bond: Code, § 690.

III. On the sixteenth day of November, 1883, Ruggles, the treasurer, called upon the county auditor, and requested a blank bond, that he might procure sureties thereto. The auditor inserted in the blank a penalty of $100,000, and filled other blanks, excepting the blank in the body of the instrument for the names of the sureties. Ruggles took the oath of office before the auditor on the same day, which oath was indorsed on the bond, and the blank bond was delivered to him. It will be observed that this was several weeks before

2. ——: bond: conditional signatures of sureties: conditions broken: liability.

the bond was approved. The sureties, being fourteen in number, reside in different parts of Carroll county. Ruggles procured their signature to the bond by personal application to them. Some of them were procured at the houses of the sureties, and others at stores and other places where Ruggles happened to meet them. The amount named in the bond being large, the matter of the undertaking by the sureties was fully discussed between the sureties and Ruggles. In all, or nearly all, of these interviews with the sureties, Ruggles assured them that he would procure a large number of the substantial citizens of the county to sign the bond, and, in most instances, he named certain persons who he stated had promised to become sureties; and he assured those whose names he obtained that he would procure the names of others, naming them. The sureties signed the bond with this understanding, and intending to be liable only upon the condition that the other names should be procured by Ruggles. But Ruggles failed to keep his agreement. He did not procure the signatures of many persons whom he promised the defendants he would procure, and upon which promise the defendants relied. The blank in the body of the bond for the names of the sureties was not filled until all of the defendants had signed their names. The blank was then filled with the names, excepting that of W. F. Minchen, whose name was not inserted in the blank. An affidavit of all the defendants but Minchen, justifying as to their qualifications as sureties, appeared upon the bond as having been made and sworn to before a notary public on the seventh day of January, 1884. The affidavit of Minchen was made before the clerk of the district court on the eighth day of January, and on that day the bond was approved by the board of supervisors.

It will be seen from the foregoing statements of facts that when the bond was presented to the board for approval it was complete in every respect, and in the usual and proper form, with the single exception that the name of Minchen

Carroll County v. Ruggles et al.

was not inserted in the body of the instrument. It is claimed by appellants that, as the bond was not to be delivered to the county without the additional names which Ruggles was to procure, the delivery and approval by the board was without authority from the sureties, and created no binding obligation against them. There is a large number of authorties cited by counsel for both parties upon the question of law arising upon these facts. Many of these authorities are not of much aid in the determination of the question, because they are not entirely in point. It appears, also, that such as are applicable to the question are not in accord. But our examination of them has led us to the conclusion that the great preponderance of authority, and the better principle, leave but little doubt that the sureties are liable. Indeed, we doubt if any case can be found where a bond such as this appeared to be upon its face, and which was signed by the sureties in blank,—that is, without the names of others inserted in the bond who were to be procured as sureties,—has been held invalid because the names of the sureties' were procured by the principal upon condition that he would procure others to sign the instrument.

The case of *Dair v. U. S.*, 16 Wall., 1, is precisely in point. The defense of the sureties was the same in that case as in this. The bond was a blank. The name of the surety to be procured as a condition was not in the bond when the sureties signed their names. It was held that the defendants were liable, and the cause is distinguished from *Pawling v. U. S.*, 4 Cranch, 219, in which the additional sureties to be procured were named on the face of the bond. In *Dair's Case* one Cloud was to be procured as a co-surety. The court say: "If the name of Joseph Cloud appeared as a co-surety on the face of this bond, the estoppel would not apply, for the reason that the incompleteness of the instrument would have been brought to the notice of the agent of the government, who would have been put on inquiry to ascertain why Cloud did not execute it, and the

pursuit of this inquiry would have disclosed to him the exact condition of things."

The case of *Brown v. Perkins, Probate Judge*, 42 Mich., 501; S. C., 4 N. W. Rep., 195, was a suit on a guardian's bond. The bond was drawn up on a printed form, and filled in with all but the names of the obligors. It purported to be drawn to bind the guardian as principal, and the word "sureties" was partly printed and partly written, with a blank for their names not filled in. Brown, the surety, signed the bond, while no name was inserted as surety, and he offered to show that when he had signed it he gave it to the guardian with an agreement that he should procure the signature of one Withey as another surety, and that the bond should not be used without Withey's signature; that the guardian did not procure Withey's signature, but took the bond to the judge of probate, who wrote in Brown's name, and changed the word "sureties" to "surety," and made an order of approval. It was held that the surety was liable upon the bond. And see, also, *McCormick v. Bay City*, 23 Mich., 457; *State v. Peck*, 53 Me., 284; *State v. Pepper*, 31 Ind., 76; *Millett v. Parker*, 2 Metc., (Ky.) 608.

The defendants, among other cases, rely upon *Daniels v. Gower*, 54 Iowa, 319. That was an action against sureties upon a non-negotiable promissory note, and it was held that when an instrument of that kind was signed by sureties, and deposited with a stranger to the note, to be delivered upon a certain condition, and was delivered by the depositary to the principal maker, and by him to the payee, in violation of the condition, the delivery was not binding upon the sureties, and the note against them was not enforceable. It is true, it is said in that case that the principle involved in cases arising upon official bonds is very nearly the same. But the question as to the rights of sureties upon official bonds was not before the court, and what is said in the opinion in relation thereto was not essential to the determination of the case.

The case of *Pepper v. State*, 22 Ind., 399, cited in the opinion, is not in point in this case, because in that case the names of certain persons were inserted in the body of the bond, and a part only of such names were afterwards signed to it. It was a case similar to *Pawling v. U. S., supra.*

Our examination of this question, in this case, has convinced us that the rights of parties of official bonds are not just like the rights of parties to purely personal transactions. A board of supervisors should not be required to compel the attendance of sureties to official bonds, to ascertain whether their names were affixed with conditions. They do not even have the power to compel such attendance. The time and place for the approval of such bonds are fixed by law. The board ought not to be expected to follow the principal over the county, and seek out and interview the sureties upon the subject of their obligation. It was the duty of the sureties to see that the principal in the bond, who was their agent, and who undertook to procure the additional sureties, performed that duty, and, in the event of his failure to do so, withdraw from the bond before its approval. When the bond is in proper form, there is nothing to apprise the board of supervisors of any conditions or limitations upon the obligation of the parties thereto, and sureties ought not to be allowed to wait until a defalcation occurs to make known and avail themselves of private stipulations and conditions between themselves and their principal. We have no doubt that nearly every official bond now in force in this state, including bonds of public officers, executors, administrators and guardians, is as vulnerable to a defense of this kind, real or assumed, as the bond in suit; and if we were to hold that such a defense is available to a surety, it would, in our opinion, tend very greatly to impair the value of official bonds. As is said in *Dair v. U. S., supra*: "It is easy to see, if the obligors are at liberty when litigation arises, and loss is likely to fall

upon them, to set up a condition unknown to the person whose duty it was to take the bond, and which is unjust in its result, that the difficulties of procuring satisfactory indemnity from those who are required by law to give it will be greatly increased. Especially is that so since parties to the action are permitted to testify." •

The only irregularity upon the face of this bond is that the name of Minchen does not appear in the body of it. There was nothing in this to arouse any suspicion in the minds of the members of the board of supervisors that the board was subject to any conditions whatever.

VI. All of the defendants who were examined as witnesses were asked by their counsel to state, in general terms, 3. ——: ——: their intention in signing and delivering the ——: evidence. bond. The evidence was objected to, and the objection was sustained. This ruling of the court is claimed to be erroneous. It is unnecessary to determine in what cases a witness may be allowed to state his intention in doing an act. It will be observed that we hold that the intention of the defendants was wholly immaterial, unless such intent was known to the board of supervisors before the bond was approved; and it is not claimed that the bond had any such knowledge.

V. Among the items of cash with which the treasurer was charged, there was the sum of $675, which the defend4. PRACTICE ants claim was not paid into the hands of the on appeal: errors must treasurer in his official capacity, and that they appear of record. are not liable therefor. It is impossible to determine from the record in the case whether this sum was included in the judgment in the court below. The amount of the judgment is less than the amount of the defalcation, as shown by the evidence. There was no finding of facts upon this question, and it may be that the item complained of was excluded in the computation made by the court. The court found the defalcation to be $23,399.64, and the proof shows, and defendants' counsel in their opening argu-

ment state, that Ruggles was a defaulter in the sum of about $24,000. It may be that the court found the whole defalcation, including the item of $675, to be such a sum as that, deducting that item, the balance would equal the judgment.

Our conclusion is that the judgment of the circuit court must be

AFFIRMED.