ROLLINS v. EBBS.

(Filed December 20, 1904).

GUARDIAN AND WARD—*Bonds—Penalty—The Code, sec. 1574—Suretyship.*

A guardian bond is not binding on the sureties thereto where it did not state the amount of the penalty at the time it was signed and they did not afterwards authorize any one to insert the amount.

CLARK, C. J., and DOUGLAS, J., dissenting.

ACTION by T. S. Rollins against F. C. Ebbs, heard by *Judge E. B. Jones* and a jury, at May Term, 1904, of the Superior Court of HAYWOOD County.

This action was brought by the plaintiffs on a guardian's bond. The defendants alleged that the amount of the penalty was not in the paper-writing at the time they signed it, and this was the principal matter in controversy. Much testimony was introduced upon that question. Issues were submitted to the jury, which, with their answers, were as follows:

1. "Did the defendants I. N. Ebbs, M. L. Duckett, D. P. Plemmons, Joe M. Rector and Jasper Ebbs make and deliver their bond, in writing, to the State of North Carolina, for the benefit of James Blaine House, as alleged in paragraph three of the complaint? Ans. 'Yes.'"

2. "Did the defendant F. C. Ebbs, as guardian of James Blaine House receive the sum of $7,000, property of his ward James Blaine House, as alleged in paragraph four of the complaint? Ans. 'Yes.'"

3. "Did the defendant F. C. Ebbs, as guardian of James Blaine House, in violation of and in breach of said bond, use and appropriate to his own use the sum of $4,666.66 2-3 of his ward's money, as alleged in paragraph six of the complaint? Ans. 'Yes.'"

4. "In what sum, if any, is the plaintiff or the relators damaged because of the said breach of the said bond? Ans. 'In the sum of $4,666.66 2-3, with compound interest from the 8th day of March, 1900, until paid.' "

5. "Was the paper-writing or bond described in and mentioned in paragraph three of the complaint incomplete when delivered to the Clerk of the Superior Court of Madison County in that it contained no penalty, and in that the space where the penalty should have been written was left blank, as alleged in the first paragraph of the further defense contained in the answer? Ans. 'No.' "

6. "Was the penalty of $13,000 left out of the said bond or paper-writing described and mentioned in paragraph three of the said complaint, and the space wherein the penalty should have been written left blank, because of the mutual mistake and inadvertence of the parties thereto, as alleged in the reply of the plaintiff?" Ans.

7. "Was the penalty $13,000 left out of said bond or paper-writing described and mentioned in paragraph three of the said complaint because of the mistake or inadvertence of the Clerk of the Superior Court of Madison County, as alleged in the reply of the plaintiff? Ans. 'No.' "

8. "Was the penalty of $13,000 left out of said bond or paper-writing mentioned and described in paragraph three of the said complaint, and the space wherein the penalty should have been written left blank by reason of the fraud of the makers of said bond, perpetrated and practiced upon the Clerk of the Superior Court of Madison County, as alleged in the reply of the plaintiff?" Ans.

9. "Was it the purpose and intention of the defendants, at the time of signing the paper-writing introduced in evidence, that the same should be used and filed as a guardian bond by F. C. Ebbs, as guardian of James Blaine House? Ans. 'Yes.' "

ROLLINS *v.* EBBS.

10. "Was the penalty inserted in the paper-writing purporting to be a bond at the time Jasper Ebbs signed the same? Ans. 'No.' "

11. "Was the penalty $13,000 inserted in the paper-writing purporting to be. a bond at the time the defendant Plemmons signed the same? Ans. 'No.' "

12. "Was the penalty $13,000 inserted in the paper-writing at the time M. L. Duckett signed the same? Ans. 'No.' "

13. "Have the defendants Jasper Ebbs, M. L. Duckett, D. P. Plemmons, or either of them, since the signing of the paper-writing or bond, authorized any one to insert the penalty $13,000 in said bond? Ans. 'No.' "

The defendants in apt time objected to issues numbered 1, 6, 8 and 9. Objection overruled. Defendants moved for a new trial upon exceptions. Motion overruled. Judgment for plaintiff. Defendants excepted and appealed.

*Moore & Rollins,* for the plaintiff.
*Crawford & Hannah* and *J. M. Gudger, Jr.,* for defendants.

WALKER, J. after stating the facts. It is clear what the Court meant when it submitted the tenth, eleventh and twelfth issues to the jury, and it is equally apparent what the jury intended to find by the answer to those issues. The inquiry manifestly was whether the amount of the penalty had been written in the bond before the time that the sureties Ebbs, Duckett and Plemmons signed it and not merely whether it was inserted at that particular time. Such an inquiry as the one last mentioned would, to say the least of it, have been immaterial. The jury found that the amount was not in the bond at the time it was signed and that the sureties named in the issues had not authorized any one to insert the penalty.

Our opinion was, at first, that enough appeared in the record to bring the case within the principle stated in *Humphreys v. Finch,* 97 N. C., 303, 2 Am. St. Rep., 293, but we are now satisfied that a correct interpretation of the verdict renders that case inapplicable. The jury by the tenth, eleventh and twelfth issues have found that the amount of the penalty was inserted after the paper-writing was signed by the sureties, and by the thirteenth issue they have found as a fact that Ebbs, Duckett and Plemmons "had not authorized any one to insert the penalty $13,000 in said bond." This it seems to us presents just such a case as was considered in *Graham v. Holt,* 25 N. C., 300, 40 Am. Dec., 408, in which *Justice Daniel* uses this language: "A bond is the acknowledgment of a debt under seal, the debt being therein particularly specified. In every good bond there must be an obliger and an obligee, and a sum in which the former is bound. Shep. Touch., 56; Com. Dig., Obligation A; Hurleston, 2. In New York *Ex-parte Therwin,* 8 Cowen, 118, and some other of the American cases, the *nisi prius* decision before *Lord Mansfield* of *Texira v. Evans,* 1 Anst., 229, *in nota,* has been followed. That case was where a party executed a bond with blank spaces for the name and sum and sent an agent, without a power of attorney under seal, to raise money on it; the agent accordingly filled up the blanks with the sum and the obligee's name, and delivered the bond to him. On the plea of *non est factum* the bond was considered well executed. But the case of *Texira v. Evans* has been by this Court twice overruled as attempting to establish a distinction in the mode of executing deeds by attorney, where the object was to raise or secure money, and when it was to operate as a conveyance—the first, by a power of attorney not sealed, the other with a power of attorney under seal. The notion with us has always been—what we learned from Co. Lit., 52 (*a*) and the Touchstone 57—that he who executes a deed as agent for an-

other, be it for money or other property, must be armed with
authority under seal.   The insertion of the sum in the blank
space was intended to consummate the deed; it was done
without *legal* authority, and the instrument is void as a bond,"
citing *McKee v. Hicks,* 13 N. C., 379; *Davenport v. Sleight,*
19 N. C., 381, 31 Am. Dec., 423.   The same idea is also
strongly expressed by *Chief Justice Ruffin* in *Davenport v.
Sleight, supra,* as follows: "The ancient rule is certain, that
authority to make a deed cannot be verbally conferred but
must be created by an instrument of equal dignity.   It is
owned that there are modern cases in which it seems to have
been relaxed with respect to bonds.   This began with the case
of *Texira v. Evans,* cited 1 Anst., 229, note, on which all the
subsequent cases profess to be founded.   The Court is not
satisfied with the reasons assigned for those opinions, but en-
tertains a strong impression that they lead to dangerous con-
sequences."

In *Cadell v. Allen,* 99 N. C., 542, *Justice Merrimon,* re-
ferring to the principle as laid down in *Graham v. Holt,* and
*Davenport v. Sleight,* says: "The rule, as thus stated, is
recognized in many cases, and must be treated as settled and
of governing authority," citing *Blacknall v. Parish,* 59 N. C.,
70, 78 Am. Dec., 239, and other cases.

There has been no ratification.   This Court cannot give its
opinion or render judgment upon evidence merely.   There
must either be an admission of the facts in the pleadings or in
some other form in the record or the facts must be found by a
jury.   There is nothing admitted, or found by the jury,
which shows that the defendants have, in any way known to
the law of this State, assented to or ratified the insertion of
the penalty in the bond.

If any respect is to be paid to our decisions in preference
to those of other States, the findings of the jury upon the last
four issues, if those issues stood alone, would entitle the ap-

pellants to a judgment. But the answers to the issues in this case, taken as whole, are themselves conflicting. The jury have found, in response to the first issue, that the defendants made and delivered their bond, in writing, to the State for the benefit of the principal's ward, and yet, in answer to subsequent issues, they have found that the amount of the penalty was not in the paper at the time of the signing by defendants, and that it was not put there afterwards by any authorized person. The insertion of the amount at or before the time of signing was necessary to constitute the paper a perfect instrument, a good bond, unless the amount was afterwards inserted by some one having authority to do so, or unless the signers themselves afterwards ratified what had been done to make the instrument complete and in the manner indicated by this Court in the cases already cited. "If an instrument with a seal to it, says *Hall, J.,* is not completely executed by signing, sealing and delivering, it cannot become so by any act of an unauthorized agent. It would be dangerous if the law were otherwise." *McKee v. Hicks,* 13 N. C., 380. This was said with reference to the very kind of question we are now discussing, as an extract from the syllabus of the case will show: "A deed must be perfect in all respects before its delivery. Where a blank was left in a bond for money, to be filled up when the sum was ascertained, and after the delivery the blank was fairly filled up by a stranger: *Held,* that the instrument was void." Page 379. This was ruled to be the law, even when the alleged obliger had actually received the money on the faith of its being his valid bond. In that case this Court went still further and affirmed the judgment, notwithstanding a charge by which the jury were instructed that the defendant was not bound by the bond as his deed, "unless the person filling up the blank, on delivering the paper, had at the time of the delivery authority under the hand and seal of the defendant to do so." Page 380.

The case of *Humphrey v. Finch*, 97 N. C., 303, as we have said, does not apply. The decision is based upon the idea of an equitable estoppel, which cannot arise in this case, as the jury have found that no authority to insert the amount in the bond was given, which was not the fact in *Humphrey v. Finch*. That case might well have been decided upon the doctrine of agency.

This is not a question of the alteration of an instrument, but a question of authority to complete the instrument so as to make it binding, as is clearly stated in 2 Cyc., 159, and it is too plainly so to require any further discussion.

Nor do we think the fact that this is a statutory bond alters the case in favor of the plaintiff. If there is any difference in respect to the question under consideration between such a bond and an ordinary bond or deed, that difference in this particular case is rather favorable to the defendants. The Code, sec. 1574, requires that "a guardian before letters of appointment are issued to him must give a bond payable to the State with two or more sufficient sureties, to be acknowledged before and approved by the Clerk of the Superior Court and to be jointly and severally bound. The penalty in such a case must be double, at least, the value of all personal property and the rents and profits issuing from the real estate of the infant, which value is to be ascertained by the Clerk of the Superior Court by the examination, on oath, of the applicant for guardianship or of any other person." It will be observed that the bond must be acknowledged before the Clerk and approved by him and the penalty must be double, at least, the value of the personal property and the rents and profits, which value the Clerk ascertains. The penalty, therefore, is not fixed at any certain sum applicable to all cases. It may not be the same in any two bonds. It is at least variable, just as in the case of the amount to be paid in ordinary bonds or notes under seal, and the insertion of it is

ROLLINS *v.* EBBS.

therefore just as material and essential to the completeness of a statutory bond as the amount to be paid is to that of an ordinary bond. The amount must be expressed in both. We are unable to see how any authority to fill up the blank can be implied in the case of a statutory bond that would not be equally implied in the case of other bonds. Both kinds of bonds are delivered to carry out the intention of the obligors, and in the case of a guardian bond there is the additional reason against the implication that the amount of the penalty is expressly required to be ascertained by the Clerk. An individual in his private capacity cannot execute a statutory power.

Our purpose has not been so much to prove that the paper-writing signed by the defendants is void as a bond, as to make clear the construction we put upon the verdict and to show, consequently, the findings of the jury to be so conflicting that the Court below could not proceed to judgment, and that this Court cannot now intelligently pass upon the merits of the case. The view we take of the question involved, leads us to the conclusion that there should be a new trial so that the facts may be fully and consistently found by the jury. The plaintiff may be able to show that the bond is a valid obligation of the defendants.

New Trial.

CLARK, C. J., dissenting. It is not controverted that the defendant F. C. Ebbs, guardian, converted the funds of his ward to his own use, nor is there any dispute over the finding as to the amount of such defalcation. The only contested fact is whether when the bond, which is in the regular form, was signed by three of the sureties, 13,000 was not written after $. Upon this omission (if true) and the subsequent filling in of the blank with 13,000 by one of the sureties, who carried the bond to the Clerk to be filed, the sureties now seek

to avoid their obligation, which is set out in the bond distinctly, to be responsible for any failure of F. C. Ebbs, as guardian, to safely keep and account for the property of his ward. The evidence of the Clerk is uncontradicted that the bond was handed to him by I. N. Ebbs, one of the sureties, and that it was then complete, the $13,000 being filled in, and his deputy, who copied it, testifies to the same effect. I. N. Ebbs, one of the sureties, certified as notary public that the other sureties appeared before him and justified to the amount set opposite their respective names. These amounts, together with the sum he himself justified to before the Clerk, aggregate $13,000, the sum which was written in the bond when handed in by him to the Clerk and recorded.

The jury found in response to the first issue that "the defendants I. N. Ebbs, M. L. Duckett, D. P. Plemmons, J. M. Rector and Jasper Ebbs made and delivered their bond in writing to the State of North Carolina for the benefit of James Blaine House, as alleged in paragraph three of the complaint;" and in response to the ninth issue that it "was the purpose and intention of the defendants at the time of signing the paper-writing introduced in evidence that the same should be used and filed as a guardian bond by F. C. Ebbs, as guardian of James Blaine House."

If, upon the facts above set forth and which were uncontroverted, the filling in of 13,000 in the blank to total up the several justifications by the surety who was entrusted by them to bring the bond to the Clerk (an addition in nowise changing the nature of the obligation), can vitiate the bond, which was perfect when handed to the Clerk by one of their number, then no guardian or administrator's bond is safe unless the sureties shall all sign and justify before the Clerk.

The Code, sec. 1891, was intended to prevent just such defects in obligations of this nature and to avoid trivial and technical objections. It provides that "whenever any instru-

ment shall be taken or received   *   *   *   by any person or persons, acting under or in virtue of any public authority, purporting to be a bond executed to the State for the performance of any duty belonging to any office or appointment, such instrument, notwithstanding   *   *   *   any variance in the penalty or condition of the instrument from the provision prescribed by law, shall be valid and may be put in suit in the name of the State for the benefit of the person injured by a breach of the condition thereof, in the same manner   *   *   * as if the penalty and condition of the instrument had conformed to law."

It would seem that as the bond contained the figures 13,000 after the $ mark when handed to the Clerk by one of the sureties, who had taken the justification of the other sureties and who had been entrusted by them to deliver the bond to the Clerk, and as the jury has found that "it was the purpose and intention of the defendants at the time of signing the paper-writing that it should be used and filed as a guardian bond of F. C. Ebbs," that if the 13,000 was written in by said co-surety before handing the bond to the Clerk it was immaterial, and the defendants cannot protect themselves by the act of their agent of which the Clerk had no knowledge. They impliedly, at least, authorized him to fill in the blank, and cannot be permitted now to deny such authority to the detriment of the ward.

But if the instrument could be taken as filed, with $——— blank, as the defendants allege it was when signed by them, the above section 1891 provides that "any variance in the penalty or in the condition of the instrument from the provision prescribed by law" shall not invalidate it. A smaller variance than this could scarcely happen. The penalty named merely limits the liability of the sureties, and the insertion of 13,000 after $ merely restricted their liability to that sum, whereas without it their liability by the tenor of the bond

extended to responsibility for the safe-keeping of any funds or property of the ward, which might have come into the hands of the guardian without limit as to the amount.

Independent of our curative statute it is held that the bond "may be executed by the sureties while the penal sum is still blank; and although the principal may have informed them that the sum is to be a certain amount, and he afterwards inserts a larger amount by direction of the judge of probate, yet the bond holds the sureties." Croswell on Executors and Administrators, 190; *White v. Duggan,* 140 Mass., 18, 54 Am. Rep., 437. Such bonds are unlike bonds for the payment of money (in which the amount is material), in that in these bonds the honest and faithful performance of duty by the fiduciary is the obligation and the amount of the penalty is simply a form, and at most merely restricts the extent of the liability. Here the amount ($13,000), even if inserted without knowledge of the defendants, aggregates exactly the sums for which they severally justified.

In 2 Parsons on Contracts, 720, it is said: "An alteration which only does what the law would do, that is, expresses what the law implies, is not a material alteration and therefore would not avoid an instrument." All the authorities hold that an alteration, to be material, must change the legal effect of the instrument; this is true even as to obligations for payment of money, as negotiable bills and the like. 2 Daniel Neg. Instr., sec 1373*a*. When a fiduciary "receives money or property upon the faith of a bond he and his sureties are estopped to deny the validity of the bond." Pritchard, Wills & Adm., sec. 586, construing a statute similar to our Code, sec. 1891. Here the money was paid over by the Federal Court to the guardian upon a certified copy of this bond.

"The insertion of the penal sum of a bond left blank will not vitiate the instrument." *Brown v. Colquitt,* 73 Ga., 59,

ROLLINS *v.* EBBS.

54 Am. Rep., 867; *South Berwick v. Huntress,* 53 Me., 89 87 Am. Dec., 535; *State v. Young,* 23 Minn., 551. In the case from 53 Maine, 89 *Kent, J.,* says: "When the instrument is a sealed instrument, when signed by the party, the filling in of the blanks afterwards by another is not, strictly speaking, the execution of a sealed instrument. That has already been done by the party himself. The third party does not make it a specialty by his acts. It was one before. The filling up merely perfects an imperfect sealed deed or bond." "If one signs an instrument containing blanks, he must be understood to entrust it to the person to whom it is so delivered to be filled up properly, according to the agreement between the parties, and, when so filled, the instrument is as good as if originally executed in complete form." 2 Cyc., 159, and cases cited thereto in note 74.

"An alteration of an instrument which merely supplies an omission therein and conforms it to the intention of the parties will not vitiate the writing, especially if a naked blank is left for the insertion of the omitted words." 2 A. & Eng. Ency. (2 Ed.), 212; *Hunt v. Adams,* 6 Mass., 519; *Bank v. Stirling,* 13 Nova Scotia, 439; *Conner v. Routh,* 7 How. (Miss.), 176, 40 Am. Dec., 59; *Boyd v. Brotherson,* 10 Wend. (N. Y.), 93 *Clute v. Small,* 17 Wend. (N. Y.), 238. "If a party to an instrument intrusts it to another for use, with blanks not filled, such instrument so delivered carries on its face an implied authority to fill up the blanks necessary to perfect the same; and as between such party and innocent third person, the person to whom the instrument is so intrusted must be deemed the agent of the party who committed the instrument to his custody." 2 Cyc., 159. This is not only on the ground of implied agency, but because when one of two innocent persons must suffer, the loss must fall upon him who has put it in the power of another to do the injury.

*Fisher v. Dennis,* 6 Cal., 577, 65 Am. Dec., 534; *Spitler v. James,* 32 Ind., 202, 2 Am. Rep., 334; *Fullerton v. Sturges,* 4 Ohio St., 529.

It is not contended here that there was any fraud practiced on defendants, and the jury find that the instrument is of the purport and effect the signers intended. But had it been otherwise, the sureties having committed the bond, with the blank unfilled, to I. N. Ebbs to file with the Clerk, not only gave him implied authority to fill it, but they are estopped to claim any protection from an act which they put it in their co-surety's power to commit, and which was unknown to the Clerk. The same principle would apply if the sureties handed the bond to F. C. Ebbs or Tainter who delivered it to I. N. Ebbs, the other surety, who handed it to the Clerk.

The tenth, eleventh and twelfth findings were that the 13,000 was "not inserted in the paper-writing at the time" each of three of the sureties respectively named signed it. But taking this to mean that the 13,000 was not "in the writing" when respectively signed by them, the status is presented which we have discussed above. The first and ninth findings are not in conflict with such findings, for they are simply to the effect that, notwithstanding the 13,000 was filled in after such signing and before the bond was handed to the Clerk, the bond was valid. If this was a conclusion of law submitted to the jury, the error was cured by the jury answering it correctly and the judgment of the Court to the same effect.

There are but two exceptions in the record; first, to the submission of issues 1, 6, 8 and 9. Issues 6 and 8 were not answered and were harmless, even if erroneously submitted; and 1 and 9 arose on the pleadings. The other exception, that judgment upon the verdict should have been entered for the defendants, is discussed above.

DOUGLAS, J., dissenting. I think the guardian bond is binding because it is a statutory bond, and having been made and delivered for the purpose of carrying out the provisions of the statute, carried with it the inherent authority to insert such amount of penalty as would meet the statutory requirement. In any other view of the case, I would be compelled to regard the penalty of the bond as a material and essential part thereof.