INDEPENDENT SCHOOL DISTRICT OF KELLOGG, Appellant, v. S. A. MORRIS, Appellee.

No. 39463.

JUNE 24, 1929.

*F. V. Morgan* and *Campbell & Campbell,* for appellant.

*Korf & Korf* and *M. R. Hammer, Jr.,* for appellee.

KINDIG, J.—On November 25, 1925, the plaintiff-appellant, which is an independent school district, brought this action, to recover from the defendant-appellee $11,209.95, with interest.  This cause of action arose from an alleged depository bond executed by the appellee, as surety, to secure the return of school funds placed in the Burton & Company State Bank, of Kellogg.

V. R. Martin was treasurer of the school corporation. His personal bond apparently was approved by the board July 7, 1924. At that meeting, the treasurer also presented to the board

the depository bond here sued upon. Just what was done with reference to the bond now before us is not clear, because approval does not appear in the official minutes of the meeting. Yet the instrument, unchanged, remained with the school officials from that time. Other bonds to secure school deposits in the Burton & Company State Bank for previous years were executed as surety by Roy Burton and B. A. Burton. These men, before the present surety agreement was executed, went to California, and the appellee, a farmer, living near Kellogg, was by the Burtons presented with ten shares of stock, and elected president of the bank.

So the appellee, following the example of his predecessors, on July 7, 1924, signed, as surety, the instrument in litigation, upon which the Burton & Company State Bank purported to be the principal. Thereafter, the school treasurer deposited the public funds in said banking concern until that financial institution failed, January 14, 1925. Succeeding the suspension of business, a receiver was appointed, who is now executing his trust. Among the deposits at the time the bank closed was the $11,209.95 representing the school money aforesaid. Since this action was commenced on the bond before mentioned, dividends have been declared in the receivership proceeding to the amount of approximately 50 per cent, and consequently appellant's loss has been reduced accordingly.

Defenses interposed by appellee were: First, a general denial; second, negation that any deposit was made of said funds pursuant to the requirements of Section 4319, 1924 Code; third, a plea of nondelivery and failure to approve; and fourth, that the instrument was in blank, and not intended to be delivered until the district should designate said financial institution as its depository, fix the amount of the deposit and the amount of the bond. Upon motion of the appellee, a verdict was directed against the appellant at the close of its testimony.

I. Confronting us at the outset is the duty of determining whether the bond was so incomplete as to be a nullity. Enforcibility, if any there is, must be found in the existence of a contract remaining in the written undertaking after eliminating the unfinished parts. The material portions of the alleged agreement are:

"* * * We, the Burton and Company State Bank of Kel-

logg, * * * as principal, and ........................................................
* * * as surety, are held and firmly bound unto the Kellogg In-
dependent School District * * * and V. R. Martin, treasurer,
* * * his heirs, successors or assigns, in the sum of ...................
Dollars * * * for the payment of which well and truly to be
made we bind ourselves, our heirs, executors, administrators, suc-
cessors and assigns, jointly and severally, firmly by these
presents.

"Now the obligors herein shall hold said Kellogg Independ-
ent School District * * * and said V. R. Martin, treasurer,
* * * harmless from all loss by reason of such deposit or de-
posits, and if the said Burton and Company State Bank * * *
shall on demand pay to said V. R. Martin, treasurer, * * *
all moneys deposited with said * * * bank, as aforesaid, then
this bond shall be void; otherwise it is to be in full force and
effect.

"Dated, signed and sealed this 7th day of July, 1924.

"Burton and Company State Bank, Kellogg, Iowa.

"Attest: V. R. Martin, Cashier.

"By S. A. Morris, President.

"C. A. Nutt.

"S. A. Morris."

A part of said document was the qualification of the sureties,
wherein appellee swore that he was worth $50,000 beyond the
amount of his debts.

There was no penalty inserted, and the amount of liability
is not stated. No intimation is made of the amount for which
the appellee was willing to be responsible. It may be, under ac-
ceptable conditions, he would consent to secure the total deposit.
Likewise, his intention might have been to underwrite only a
limited portion thereof. An answer to this important inquiry
cannot be found in the contract itself. Where, then, is the in-
formation obtainable? Have the courts a right to supply it in a
law action? The obligee made no attempt to fill the blanks, and
this is not an equitable proceeding, wherein reformation is
sought. Convenience suggests that there be eliminated at this
juncture questions not involved.

First, it is to be noted that the appellant, by itself or through
an agent, did not, as before stated, attempt to fill the blanks.

Some courts have held that, under certain conditions, and within proper limitations, a surety who thus executes an incomplete instrument, containing blanks, thereby impliedly authorizes the obligee to supply the subject-matter agreed upon. *J. R. Watkins Co. v. Keeney,* 52 N. D. 280 (201 N. W. 833) ; *Riverside Portland Cement Co. v. Maryland Cas. Co.,* 46 Cal. App. 87 (189 Pac. 808) ; *Lloyd v. American Can Co.,* 128 Wash. 298 (222 Pac. 876) ; *Pacific Auto. Exch. v. Stansfield,* 62 Cal. App. 577 (217 Pac. 566) ; 21 Ruling Case Law 969, Section 22. Whether the appellant was authorized to fill in the said spaces in the bond before us, we do not decide or suggest, because the question is not raised. Nor do we determine or intimate that a court of equity possesses the authority to reform such an instrument to the extent that it may insert a penalty when none, in fact, exists. Our purpose in calling attention to these matters at this place is to emphasize their absence from the problem presented.

On the other hand, the issue raised is a narrow one; for its scope includes only the right of appellant in a law action to recover on the deficient bond. Manifestly, under the penalty portion of the undertaking, there is no contract; for therein the appellee agreed to pay the school district and the treasurer ............... dollars. *Spring Garden Ins. Co. v. Lemmon,* 117 Iowa 691; *Copeland & Brantley v. Cunningham,* 63 Ala. 394; *Rollins v. Ebbs,* 137 N. C. 355 (49 S. E. 341) ; 9 Corpus Juris 12, Section 14; *State v. Boring,* 15 Ohio 507; 21 Ruling Case Law 969, Section 22. In *Spring Garden Ins. Co. v. Lemmon,* supra, it is said:

"The general rule is that a bond in which the amount of the penalty is left blank is invalid, and no action can be maintained thereon."

Also, the Ohio court, in *State v. Boring,* supra, made use of appropriate language to this effect:

"An immaterial blank, as of the date, or the name of the obligor, may be inserted. Such interlineations do not affect the obligation. It is valid without them. But, without the sum is inserted, the bond is of no validity. In the case at bar, the obvious intention of all the defendants was that this bond should be filled up by someone, and that it should be used for the purposes to which it was applied. This state of facts presents strong

reasons why the instrument should be sustained. It makes a case of great hardship if it cannot be sustained. Looking very much like adhering to form, at the expense of justice. * * * we look to the law for a solution of this question, and we find the course of decision uniform in this court, in the courts of our sister states, of the United States, and Great Britain. They all concur in holding that such a blank could not be filled [without authority] as this was filled. There is not a case to be found that supports this bond."

Judgment could not be rendered against the appellee, for the reason that no court can determine the amount thereof. According to the agreement, there was no sum named. Hence, there is no basis at law for any redress whatsoever, so far as the penalty provisions are concerned. Unless, therefore, in the defeasance clause there is appropriate language signifying appellee's agreement to be bound under determinable conditions, there can be no recovery. Appellant contends that the defeasance portion of this instrument is sufficient to warrant a recovery. Reliance is made upon *Treasurer of State Lunatic Asylum v. Douglas*, 77 Mo. 647. Involved therein was a bond guaranteeing the payment of board for an insane patient, and the amount to be thus paid was left blank; but the court permitted relief, on the theory that the whole contract was not intended to be reduced to writing. Oral testimony was supplied, to cover that part of the agreement not embraced in the writing, and thereby the obligation was fixed. Distinction clearly appears between *Treasurer of State Lunatic Asylum v. Douglas*, supra, and the case at bar. Here the entire contract, if there was any, was incorporated in the writing.

A careful study of the defeasance clause reveals the fact that all burdens therein imposed upon appellee relate back to the penalty in the first part of the undertaking. To put the thought in another way, the penalty was to be met by appellee, under the provisions named in the defeasance. Without the penalty, the defeasance becomes immaterial, under the instrument now considered; for the defeasance simply stipulates when the penalty shall be due. By penalty is meant that referred to in the first paragraph of the document. However, there is no penalty, because the place therefor was never filled, but left blank. Necessarily, then, when the defeasance clause puts into operation the

penal provision, it operates upon a nothingness, or a nullity. Undoubtedly, an obligation in the defeasance clause complete in and of itself could be enforced against the surety, provided it were so independent of the unenforcible penalty as not to be limited thereto.

Nevertheless, appellants do not present that sort of a bond, because of the invalidity indicated. Defeasance in the bond sued upon was no broader and rose no higher than the penalty fixed. Provisions for the penalty and those for the defeasance were not separate and distinct, but rather, one and inseparable.

The motion for a directed verdict was properly sustained. That part of the omission wherein the name of the surety is blank does not necessarily invalidate the instrument. *Carroll County v. Ruggles*, 69 Iowa 269.  Because of our previous discussion, it is not now essential that we give this phase of the controversy any further consideration.

II. Further argument is made by the appellant on the theory that, while the bond may not impose upon appellee a liability under the common law, it does, however, make him responsible on a statutory obligation. With this we are constrained to disagree. Section 4319 of the 1924 Code provides:

"It is hereby made the duty of the treasurer of each school corporation to deposit all funds in his hands as such treasurer in some bank or banks in the state at interest at the rate of at least two per cent per annum on ninety per cent of the daily balances payable at the end of each month, all of which shall accrue to the benefit of the general fund of such school corporation; but before such deposit is made, such bank shall file a bond with sureties to be approved by the treasurer and the board of directors of such corporation in double the amount deposited, conditioned to hold the school corporation harmless from all loss by reason of such deposit or deposits; * * *."

Nothing contained within that statutory provision aids the appellant, under this record.

Contemplated within that legislation is a bond "in double the amount deposited." Obviously, therefore, the penalty or limitation of liability was intended. Appellee had a right to limit the amount for which he was willing to obligate himself for

the hazards of such deposit. Both the appellant and the appellee contemplated a limitation in that regard, because they drew the instrument in such a way as to indicate that a maximum penalty was to be inserted. Perhaps the appellee could assume the entire deposit without qualification, but that he did not intend to do. Whether statutory or not, the bond is incomplete, and so uncertain that no one can know what burden appellee intended to bear. *Rollins v. Ebbs,* supra, while discussing this subject, declares for the principle just announced, in this phraseology:

"Nor do we think the fact that this is a statutory bond alters the case in favor of the plaintiff. * * * We are unable to see how any authority to fill up the blank can be implied in the case of a statutory bond that would not be equally implied in the case of other bonds. Both kinds of bonds are delivered to carry out the intention of the obligors * * *."

Legislative requirements relating to the school deposit bond are neither that there shall be no penalty nor that a surety cannot limit the amount of the responsibility.

Plainly, therefore, the statute does not, in this instance, give the appellant relief where the bond itself does not.

III. Estoppel, as such, is not pleaded in appellant's petition. But something is said in the argument to the effect that appellee, after the bank closed, made certain statements in reference to his accountability under the bond. Regarding this, the witness Charles E. Holmdahl said:

"I was in the post office, looking for mail, and Mr. Morris came in, and he opened the door at the back end, and he took me back in there, * * * and told me that, when he signed the bonds for the school district, he was under the impression that it was a preferred claim, but it seems that he was mistaken. 'I don't want you boys to be hard on me, but give me six months' time, or thereabouts, and I will settle up.' "

Following that conversation, it seems, a tentative compromise settlement was made between the appellee and the appellant. Afterwards, the school district repudiated that agreement.

A careful review of the conversation and attempted compromise indicates, not that appellee at any time admitted the

596

validity of the defective bond, but rather, that he was anxious to avoid litigation, and dispose of the dispute in some satisfactory way through settlement. Statements thus made by appellee in the presence of the witness Holmdahl were after the bank's failure, when its doors were closed. Prejudice to the appellant did not arise therefrom, for the school district made no change in its position because thereof, nor acted any differently than it would have done, had those words never been spoken.

IV. Complaint is further made by appellant because it was not permitted, at the trial, to introduce oral testimony concerning the contents of the treasurer's report and what was said by the treasurer to the board. It appears that the transactions occurring at the board meeting were recorded in writing by the secretary, and that record was before the court. Moreover, the statements offered in evidence were in the nature of hearsay, due to the fact that they were not made in the presence of the appellee. Upon the whole record, therefore, it is obvious that the court did not err in excluding this evidence.

We do not decide whether the appellant could or could not show approval of the bond on its own part by oral testimony, because, even if a formal (though ex-parte) act in that regard had been taken and evidenced by a proper written record, yet such formality, in and of itself, could not transform the fatally defective instrument into a complete and enforcible one.

Wherefore, the judgment of the district court is affirmed.— *Affirmed.*

ALBERT, C. J., and EVANS, WAGNER, and GRIMM, JJ., concur.