# Case No. 15,862.

## UNITED STATES v. NELSON et al.

### [2 Brock. 64.] [1]

Circuit Court, D. Virginia. Nov. Term, 1822.

BONDS — EXECUTION IN BLANK — AUTHORITY TO FILL BLANKS—VALIDITY—SURETIES.

1. A. and B. consented to become sureties in an official bond. A printed paper in the usual form prepared for official bonds was signed by them. At the time that A. and B. signed it, all those parts which are usually written, including the penalty, the names of the obligors, &c., were blank; and C., the principal, had not

1 [Reported by John W. Brockenbrough, Esq.]

yet signed it. A. and B. signed it with a perfect knowledge of the purpose for which it was designed, but the blanks were afterwards filled up in their absence, and without any express authority from the sureties, and the bond so executed was accepted by the proper authorities of the United States, as the official bond of C., with A. and B. as his sureties. *Held*, that such bond is not obligatory on A. and B.

[Distinguished in City of Chicago v. Gage, 95 Ill. 611. Cited in City Council of Charleston v. Ryan, 22 S. C. 339; Danker v. Atwood, 119 Mass. 148. Cited in brief in Keyser v. Hitz, 2 Mackey, 518. Cited in Lockwood v. Bassett, 49 Mich. 549, 14 N. W. 492; People v. Organ, 27 Ill. 29; Preston v Hull, 23 Grat. 610; Trice v. Cockran, 8 Grat. 448; Rhea v. Gibson, 10 Grat. 220. Disapproved in Van Etta v. Evenson, 28 Wis. 37; White v. Duggan, 140 Mass. 20, 2 N. E. 110.]

[2. Cited in White v. Vermont & M. R. Co., 21 How. (62 U. S.) 578, which holds that bonds issued in blank are negotiable and payable to the holder as bearer, and that the holder may fill up the blank with his own name, or make them payable to himself or bearer, or to order.]

Debt for $7,000 against Thomas Nelson and Samuel Myers, surviving obligors of John Archer, Thomas Nelson, and Samuel Myers. This action was founded on an instrument purporting to be an official bond executed by the above parties in the penalty of $7,000, the condition whereof was, that the said Archer should faithfully discharge the duties of paymaster of the twentieth regiment of infantry, of the army of the United States, The declaration assigned various breaches of the condition of the bond, and the defendants pleaded severally a special non est factum. The jury found a special verdict presenting the following state of facts, viz.:

That John Archer, the deceased co-obligor of the defendants, was, previous to the date of the paper writing in the declaration mentioned, appointed paymaster, &c., and, as such, was by the law of the United States bound to give such bond and security as the bond in this case purported to be: that the said paper writing, purporting, &c., was signed, sealed, and delivered, by the defendants as their act and deed, and when it was so signed, sealed, and delivered, none of the manuscript parts (the formal parts of the bond being printed) were written. (The bond, with the manuscript parts aforesaid in italics, is in the words and figures following, viz.:)

"Know all men by these presents, that we, *John Archer, lieutenant in and paymaster of the twentieth regiment of infantry in the army of the U. S. of North America, Thomas Nelson and Samuel Myers*, are holden and stand firmly bound and obliged unto the United States of North America, &c. in the penal sum of *seven* thousand dollars current money, &c. well and truly to be paid, &c. for which payment faithfully to be made and done we the said *John Archer, Thomas Nelson, and Samuel Myers*, do bind ourselves, &c. Signed with our hands, and sealed with our seals, this *first* day of *September*, in the year one thousand eight hundred and *twelve*. The

condition, however, of the above obligation is such, that whereas the above bounden *John Archer*, is appointed *paymaster of the twentieth regiment* of *infantry* of the army of the United States aforesaid: Now, if the said *John Archer* shall well and truly execute, and faithfully discharge his duties, &c. then this obligation to be void, else, &c. Done at *Richmond*, in the state of *Virginia*, the day and year above written. . *John Archer*, (L. S.) *Thomas Nelson*, (L. S.) *Samuel Miles*, (L. S.)

"Signed, sealed, and delivered in the presence of *William Powers as to the two last, William Y. Archer as to ditto, William Woodford as to the first.*

"I, *John Archer*, do solemnly swear that I will diligently and faithfully execute and perform the duties *of paymaster of the twentieth regiment of infantry*, of the army of the United States of North America, according to the best skill and abilities of which I am possessed—so help me God. Sworn and subscribed to at *Fredericksburg*, in the state of *Virginia*, this *fourth* day of *September*, eighteen hundred and *twelve*, before me, *J. Newly, J. P.*"

That the manuscript parts had been written in the absence of the defendants, and that the said paper had not, since the same was written, been sealed, or acknowledged, as the deed of the defendants by either of them, and at that time, the name of John Archer, the principal obligor was not subscribed to said paper. That the defendants, when they so signed, sealed, and delivered, as aforesaid, the said paper in blank, in the respects aforesaid, well knew that the paper aforesaid was to serve as the bond of the said deceased obligor, and of the defendants, as his sureties, for the duties of his said office, and by their signing, sealing, and delivering, aforesaid, the defendants intended to bind themselves as sureties in the official bond of said deceased obligor. That the said manuscript parts of said paper, afterwards, as aforesaid, inserted, were so inserted without any other authority from, or consent of, the defendants, than that which is given by, or implied from, their said act of signing, sealing, and delivering the said paper in blank, aforesaid, with full knowledge of the object and purpose aforesaid, intended to be attained thereby, and their consent, at the time of such signing, sealing, and delivering the said paper, it should serve that purpose: That the said paper so, as aforesaid, signed, sealed, and delivered, was accepted by the proper authorities of the United States, as the official bond of said deceased obligor, and of the defendants as his sureties.

Upon this state of facts the jury submitted to the court the question, whether the paper in question be, or be not, the deed of the defendants? If it was their deed, then they found for the plaintiffs the debt in the declaration mentioned to be discharged by the payment of $1932 74, the amount of Archer's defalcation; otherwise, for the defendants.

MARSHALL, Circuit Justice. John Archer was appointed paymaster of the twentieth regiment of infantry, in the army of the United States. The defendants, Nelson and Myers, agreed to become his securities, and to execute such bond as was required by law. A printed paper, in the usual form prepared for official bonds to be given by paymasters, was presented to and executed by them. At the time of its execution and delivery, all those parts which are usually written, including the penalty, the names of the obligors, and the date, were blank. John Archer, the principal, had not executed it. This blank bond was afterwards filled up in the absence of the said Nelson and Myers, without their knowledge, and without any authority from them, other than is implied from their having executed the said paper with intention to bind themselves as the sureties of the said Archer, and with full knowledge of the object of the said bond. The jury further find, "that the paper, so as aforesaid signed, sealed, and delivered. was accepted by the proper authorities of the United States as the official bond of the said Archer, and of the defendants as his sureties"

The defendants pleaded a special non est factum, and the jury has found the facts, and referred to the court the question, whether this be the deed of the defendants? At the common law, all instruments under seal were considered as deeds. Every contract not under seal was considered as a parol contract To the consummation of every deed, the solemnity of a delivery is indispensable. Opinion of Marshall, C. J., in Bank of U. S. v. Danbridge, 12 Wheat. [25 U. S.] 90. Until delivery, the writing does not become the deed of the party who had sealed it. It is also necessary to the validity of a deed that it be in writing. Shep. Touch. p. 76. These two circumstances must concur, or there is no deed binding on the party whose seal is affixed to the paper. The rule requiring that the deed should be written, implies, necessarily, that it binds no further than the writing binds. Perk. Com. § 118, says: "If a common person seal an obligation, or any other deed, without any writing in it, and deliver the same unto a stranger, man or woman, it is nothing worth, notwithstanding the stranger make it to be written that he who sealed and delivered the same unto him is bound unto him in £20." There are many other authorities to the same effect. It would be useless to quote them, because the principle is not denied. In the case now under consideration, there being no sum of money mentioned in the bond, the defendants were no more bound by the instrument they had executed. at the time of its execution, than if the paper had been all blank. The Unit-

ed States could not have availed themselves of the bond in its then condition. The whole question then, is, whether the defendants have authorized any other persons to fill up this bond, in such manner as to create an obligation which did not exist when it was delivered.

It is found by the jury that the defendants executed this bond with the knowledge that it was to be received as an official bond, and with an intention to bind themselves as the sureties of John Archer, as paymaster, by this sealing and delivery of it, but that no special authority was given to any person to fill it up, nor any authority whatever, other than is implied from their sealing and delivering the paper. Does this act authorize any person whatever to insert the penalty and other written parts in the bond—and does it make the writing, in its present form, their deed? If this question depended on those moral rules of action which, in the ordinary course of things, are applied by courts to human transactions, there would not be much difficulty in saying that this paper ought to have the effect which the parties, at the time of its execution, intended it should have. But there are certain technical rules growing out of the state of things, when many of our legal principles originated, which are firmly ingrafted on the law, and still remain a part of it, though the circumstances in which they had their birth are totally changed. Perhaps every distinction between a sealed and an unsealed instrument is of this description. But the distinction, and the rules which are founded on it, have taken such fast hold of the law, that they can be separated only by the power of the legislature. Till that authority shall interpose, the courts must respect the rules as they are found in adjudged cases Those cases must be referred to in order to determine whether this be the deed of the defendants. In the case stated in Perkins, the inference to be fairly drawn from the sealing and delivery of a paper, on which nothing was written, is, that the person to whom it was delivered was authorized to write over the signature and seal, if not any obligation he pleased, an obligation for some certain thing previously agreed on by the parties, and that the person making the instrument confided in him to whom this implied authority was given, for its faithful execution. It means this, or it means nothing. Yet the obligation written over this signature was declared to be of no validity It follows, that the sealing and delivery of a paper does not imply an unlimited power to write even what had been previously agreed on by the parties. Shepherd, in his Touchstone (page 54), referring to this section of Perkins, says: "The agreement must be all written before the sealing and delivery of it; for if a man seal and deliver an empty piece of paper or parchment, albeit he do withal give com-

mandment that an obligation or other matter shall be written in it, and this be done accordingly, yet this is no good deed." This declaration, if it be law, is conclusive, with respect to a paper which is sealed and delivered as the act and deed of the party, but which, at the time of the sealing and delivery, has nothing written in it. I proceed to those cases in which an obligation is written on the paper, which is incomplete at the time, and is afterwards made complete, or in any manner varied.

The case of Markham v. Gonaston, which is reported in Cro. Eliz. 626, Moore, 547, was argued at great length, and considered by the court. That case depended on the question, whether an obligation executed with blanks for the Christian name and place of residence of a person named in it, became void by filling up those blanks. The point was argued in three different suits. The first suit was brought against Fox, on an obligation made by Sir Francis Willoughby and said Fox, and upon the plea of non est factum being pleaded, the plaintiff became nonsuited. The party injured then brought an action on the case against the person who made the alteration, who pleaded that he had written the obligation by the command of Sir Francis Willoughby, with those blanks in it: that it was in this state executed by Fox: that the blanks were then filled up by order of Sir Francis Willoughby, with the assent of Fox: after which Sir Francis executed the obligation. This plea was held ill on demurrer, and the court said, that the alteration was material, and that it avoided the bond. Moore in his report of this case, says (note) that the plaintiff afterwards brought a new action on the obligation against Fox, who pleaded the special matter, and concluded that it was not his deed. The plaintiff replied, that it was filled up with the assent of both of the obligors; and upon demurrer it was adjudged for the plaintiff in B. R. The note in Moore does not give us the words of the replication, but the term "assent" certainly implies an assent expressed, and the special plea of the person who made the alteration, as appears from Coke, was, that the alteration was made by order of one of the obligors with the assent of the other. Hargrave and Butler, in their notes on Co. Litt. quote this case in the following terms: "Obligation, with a condition to save harmless, against Tracy, with a blank. A stranger, after the delivery, fills up the blank with a Christian name, with the assent of the obligor, yet adjudged to avoid the deed because material. But if the addition is not material, as the addition of a county, and it be by a stranger, it doth not avoid the deed, though if by the party himself, it doth avoid it." In the case of Zouch v. Clay, reported in 1 Vent. 185, 2 Lev. 35, the defendant pleaded, that at the time of his executing the bond, there was a blank in it, which

was afterwards filled up, with the name of another obligor, and so it is not his deed. The plea was held ill. Ventris says, the court considered the insertion of the name of a new obligor, as not affecting the person who had previously executed the obligation, it remaining the same as to him. Levinz, in his report of the case, says, that the name was inserted with the consent of all the obligors, and, therefore, the obligation was still binding. In these cases, the obligation was complete. although the blanks had never been filled up. The alteration did not create or enlarge the obligation, or vary it to the injury of the obligor. They do not, therefore, contradict the law, as laid down in Perkins and Shepherd's Touchstone. In the case put by them, the obligation, if it exists, is created by the writing inserted after delivery. In the subsequent cases which have been noticed, the obligation was complete when it was delivered. The alteration was in the words, not in the obligation of the instrument, and that alteration was made with the assent of parties. I understand this to be an assent to the specific alteration; and to be an assent, not implied, but expressly given.

A case has been cited from 5 Mass. 538 (Smith v. Crooker), decided by a judge, whose opinions deserve to be greatly respected, and whose decisions must always have great influence with any court in which they are quoted. The case is this: An official bond was prepared for C., with a blank for the name of the surety. Cushing, afterwards agreed to become surety, and executed the bond. The blank was filled up with his name in his absence; and then C. also executed it. Cushing pleaded non est factum to this bond, but it was determined to be his deed. No person will controvert this decision. The alteration was immaterial, and not being made by the obligor himself, could not, on any sound principle of law, affect the instrument. But a principle is laid down in the opinion, which goes much farther than the decision. Judge Parsons lays down the general rule, that any material alteration will avoid the bond, but states as an exception to this rule, an alteration made by consent of parties. He adds that, "the party executing the bond, knowing that there are blanks in it, to be filled up by inserting particular names or things, must be considered as assenting that the blanks may be thus filled, after he has executed the bond." Any distinction between an express and an implied assent, in a case where the implication is so strong, as it must be where a blank is to be filled of course "with a particular name or thing," is here denied. In such a case, there is undoubtedly, good sense in the opinion which rejects this distinction; but I am not sure that it is sustained by law. He who adds to the obligation of another, must do so by the authority of that other; and I know of no case, in which, as respects a

deed, such authority is implied in a court of law, certainly of none, when not even the person is designated, by whom the authority is to be executed. But the proposition laid down by the very able judge who gave this opinion, does not necessarily extend to the case at bar. He lays down his principle, in a case "where a blank is to be filled by inserting particular names or things;" that is, where the blank is to be filled up only in one manner. But this principle does not apply to a blank to be filled up with a sum of money, which sum is not precisely fixed. It is also observable that in reviewing the cases on which he founds his opinion, the judge takes no notice of Perkins or Shepherd; and the case before him, as well as that which he supposes in giving his opinion, was not produced by a paper which was blank, or of no obligation whatever, when it was delivered. A blank of such vital importance, that the paper, while it remained, was a nullity, does not seem to have been in his view. For this reason, too, whatever authority may be ascribed to the opinion of Judge Parsons, and no person acknowledges his authority more willingly than myself, its application to the case at bar may well be doubted.

In Russel v. Langstaffe, Doug. 496 (2 Doug., Frere's Ed., 514) it is determined by the court, that "the indorsement on a blank note, is a letter of credit for an indefinite sum." The same principle is asserted by this court, in Violet v. Patton, 5 Cranch [9 U. S.] 151, 2 Pet. Cond. R. 214. If these decisions apply to sealed instruments, they decide the cause now before the court; for the presumption is at least as strong, that the defendants intended, when they executed this bond, to allow the blank to be filled with such sum as the government would require in the official bond of a regimental paymaster, as that the person who signs a blank paper, intends to give indefinite credit to the person who receives it. They, would, too, completely overturn the principles laid down in the old books. But there are certain differences in law between sealed and unsealed instruments, which make it difficult to apply the principles of one species of contract to the other; all unsealed instruments being considered as verbal contracts, they require neither writing nor delivery; they were not governed by those technical rules which are founded in the necessity of writing and delivery. General and liberal principles, therefore, which are laid down in such cases, cannot safely be applied to sealed instruments, unless the courts have expressed the intention so to apply them.

But the case on which most reliance is placed, is that of Speake v. U. S., 9 Cranch [13 U. S.] 28.[2] Speake, Beverly, and Eliason,

---

[2] 3 Pet. Cond. R. 244. See, also, Steele's Lessee v. Spencer, 1 Pet. [26 U. S.] 552. In an action of ejectment, a deed was produced exe-

had executed an embargo bond, and afterwards the name and seal of Eliason were removed, and those of Ober substituted in their place. To an action brought on this bond, the defendant, Beverly, pleaded that this alteration was made "without his consent, license, or authority." The plaintiff replied that the alteration was made "with the assent, and by the concurrent license, direction, and authority of all the defendants, and of the said Ebenezer Eliason." The defendant demurred to this plea, and the court overruled his demurrer. On appeal to the supreme court, the judgment was affirmed.

The pleadings present the case of an express authority to make the alteration, and the only questions were, whether this express authority could avail the obligee, and whether it could be given by parol. Whatever previous difficulty might have existed on this point, there is none now. The case of Speake v. U. S. [supra], has settled them; but that case goes no farther; it does not decide that an obligation may be created originally, by virtue of an authority which is not expressly given, but is implied from the sealing and delivery of a paper, which, in its existing state, can avail nothing. This point does not appear to have been ever decided in the case of a sealed instrument. The case of Speake v. U. S., in determining that parol evidence of such assent may be received, undoubtedly goes far towards deciding it; and it is probable that the same court, may completely abolish the distinction, in this particular, between sealed and unsealed instruments. .In this place I do not feel authorized to disregard it. In the English courts, from which the rules applicable to this subject are derived, the distinction is still maintained in a case which bears some analogy to this. The right of one partner to bind another, so far as respects the business of the trade, and the partnership property, is unquestioned; yet, if a partner affix a seal to the instrument, by which he promises in the name of the company to pay money, the English judges, with what propriety I shall

not now say, have determined that the company is not bound by it.[3]

I say with much doubt, and with a strong belief that this judgment will be reversed, that the law on this verdict is, in my opinion, with the defendants.

Notwithstanding the strong distrust expressed by the chief justice, of the correctness of the above decision, no appeal was taken from it. [See White v. Vermont & M. R. Co., 21 How. (62 U. S.) 578.]

---

cuted by Spencer, in which Steele was grantee, but it was apparent that the deed had been altered in this, viz., that the name of the grantee wherever it occurred, was written on an erasure, and with ink of a different colour; as also the words "Ross," and "Ohio," in describing the residence of the grantee, and these alterations were not accounted for in any manner by the testimony in the cause. The court below instructed the jury, that if the deed was altered in a material part, after it was sealed, attested, and acknowledged, such alterations made the deed absolutely void. But the supreme court said this was error, although it might be true that a material erasure or alteration in a deed, after its execution, might avoid the deed, yet, the instruction ought not to have been given in the terms used by the court. Whether erasures and alterations had been made in the deed or not, was a question of fact proper to be referred to the jury; but whether they were material or not, was a question of law which ought to have been decided by the court.

[3] But see a relaxation of this principle in Anderson v. Tompkins [Case No. 365], and the authorities there cited. See, also, 2 Selw. N. P. tit. "Partners," c. 2, and the notes. In Virginia, a scroll affixed by the obligor by way of seal, is of the same validity as if it were an actual seal of wax. 1 Rev. Code, p. 510; and where the formal parts of the bond were printed, and the blanks filled up before the obligor signed it, the scroll being printed; this was held to be a good sealing within the statute. Buckner v. Mackay, 2 Leigh, 488.
[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]