## GEORGE WHITE, Judge of Probate, *vs.* R. A. DUGGAN & others.

Norfolk.   Nov. 18, 1884. — June 24, 1885.   FIELD & COLBURN, JJ., absent.

A person who executes as surety a probate bond in blank, and entrusts it to his principal to be filled in and delivered to the obligee, is bound by the instrument as delivered, although the principal, before delivery, inserts in the bond a larger penal sum than that agreed upon between him and the surety, if the obligee has no notice, from the face of the bond or otherwise, of the unauthorized act of the principal.

HOLMES, J.   This is an action on a probate bond. The following facts are relied on as a defence by the sureties. Having signed another bond which turned out to be wrong in form, they signed this one in blank at their principal's request, and upon his representation that the penal sum in the former bond ($2000) was satisfactory, and that the new bond was to be for the same amount. The principal filled out the blank with a larger penal sum, and delivered the bond, but subsequently told the sureties that it was in the penal sum of $2000, which they believed until after this action was brought.

It does not appear in terms that the representation that the penal sum of the former bond was satisfactory was false, or that the judge of probate did not require the larger sum for the first time when the second bond was offered. And if the bill of exceptions should be taken at all strictly against the defendants, it would seem that whatever expectations they may have entertained as to the action of the Probate Court when they handed the blank bond over to their principal, they handed it to him to

be filled in as the Probate Court might require, being chargeable with knowledge that the time for final action upon the matter had not yet come. In this view of the facts, the only question is whether the case is governed by *Burns* v. *Lynde*, 6 Allen, 305, and, more especially, by *Basford* v. *Pearson*, 9 Allen, 387; and we are of opinion that it is not. In *Burns* v. *Lynde*, a deed had been delivered executed in blank, and a parol authority was relied on to make valid a subsequent filling in of the blanks in the absence of the grantor. The filling in of the blanks stood on the same footing as signing and sealing, and could be authorized only by a power under seal. *Basford* v. *Pearson* applied the same principle, without further discussion, where a deed was signed and sealed by husband and wife, and he subsequently filled in the blanks and made alterations, with the knowledge of the grantee, in the absence of the wife and by her parol authority, and then delivered the deed. It may be somewhat hard to reconcile the latter case with those decisions which sustain the filling in of blanks in the presence of a party who has previously signed and sealed, even after delivery, on the ground that this is equivalent to a new delivery. For the reason given imports that an authorized delivery will cure a defect of authority in the writing, which seems indisputable. 2 Bl. Com. 307. Perkins, pl. 130. But we do not understand that it was intended to deny this principle, as it is expressly recognized by the same judge in *Burns* v. *Lynde*, 6 Allen, 310. At all events, when the grantee or obligee is ignorant of the order in which the several parts of the instrument are written, and the delivery to him is duly authorized, he is entitled to assume that the instrument was so written as to bind the grantor or obligor from whose control it comes. We should add, that, in this Commonwealth at least, we cannot question for an instant that the authority to deliver merely may be given by parol. This does not seem to have been doubted in *Basford* v. *Pearson*. See *Parker* v. *Hill*, 8 Met. 447; *Foster* v. *Mansfield*, 3 Met. 412. To admit a doubt on this point would shake many titles.

If we are to interpret the bill of exceptions more favorably for the defendants than we have done thus far, and to take it that they only authorized the bond to be filled in with a penal

sum of $2000, — and even if we take the further step of assuming that limitation to have carried with it the understanding between them and the principal that they only assented to a delivery if the bond was filled in as they expected it to be, — we are still of opinion that no defence is made out. We are aware that there are several cases more or less opposed to our conclusion. *People* v. *Bostwick,* 32 N. Y. 445. *Ohio* v. *Boring,* 15 Ohio, 507. *United States* v. *Nelson,* 2 Brock. 64. *Preston* v. *Hull,* 23 Grat. 600, and cases cited. But we think that the prevailing tendency, both in this State and elsewhere, has been in the direction we have taken. *Thomas* v. *Bleakie,* 136 Mass. 568. *Butler* v. *United States,* 21 Wall. 272. *Dair* v. *United States,* 16 Wall. 1. *South Berwick* v. *Huntress,* 53 Maine, 89. *State* v. *Peck,* 53 Maine, 284. *State* v. *Pepper,* 31 Ind. 76. *Millett* v. *Parker,* 2 Met. (Ky.) 608.

These decisions are generally put on the ground of estoppel. It has been debated in England whether, and under what circumstances, there could be an estoppel by negligence. *Swan* v. *North British Australasian Co.* 2 H. & C. 175. And it has been admitted that there might be, in a supposed case hardly as strong as this. *Tayler* v. *Great Indian Peninsula Railway,* 4 DeG. & J. 559, 574. A specialty deriving its validity from an estoppel *in pais* is perhaps somewhat like Nebuchadnezzar's image with a head of gold supported by feet of clay. But if the case is properly put on that ground, then, as was pointed out in *Commonwealth* v. *Pierce,* 138 Mass. 165, the difference between intent and negligence, in a legal sense, is ordinarily nothing but the difference in the probability, under the circumstances known to the actor and according to common experience, that a certain consequence, or class of consequences, will follow from a certain act; and it follows that the question when an estoppel will arise is simply one of degree. If, on the other hand, the true question is the scope of the principal's authority to deliver the bond, — bearing in mind that an authorized delivery will cure defects in the writing of the bond, that the authority to deliver may be by parol, and that the scope of authority may be greater than is wished by the obligor, ostensible authority being actual authority, — then the question is equally one of degree, depending on the particular circumstances, just as the same question is

in tort. *Quacunque via,* then, all that we have to do is to deal with the case before us; and it will serve no useful purpose to consider whether, if the surety had entrusted the bond to the principal, with no authority to deliver it at all, or whether, if he had handed a blank sheet of paper, with his signature and seal at the bottom, to an agent, directing him to deliver it filled out one way, and he had filled it out in an entirely different way and delivered it, such cases would fall on one or the other side of the line. We are of opinion that, when a bond such as this is entrusted to the principal for his use, to fill it up and deliver it, the possibility of his being required by the probate judge to insert a penal sum larger than the surety directed, and of his doing so, is so obvious and so near, that the surety must be held to take the risk of his principal's conduct, and is bound by the instrument as delivered, although delivered in disobedience of orders, if, as here, the obligee has no notice, from the face of the bond or otherwise, of the breach of orders. To hold otherwise would be to disregard the habits of the community.

*Exceptions overruled.*

*J. L. Eldridge & J. E. Cotter,* for one surety.

*E. G. Pratt,* for the other surety.

*J. F. Wiggin & B. M. Fernald,* for the plaintiff.