ROLLINS v. EBBS.

(Filed April 18, 1905.)

*Verdict—Guardian    Bond—Penalty    Omitted—Sureties—*
*Agency—Estoppel.*

1.  If a verdict is necessarily inconsistent as to material issues, a new trial must be awarded, but a verdict should be taken in its entirety and all material facts found should be considered and liberally and favorably considered with a view to sustaining it, if possible.

2.  Where the verdict establishes the fact that the defendants signed a bond intending to make it the guardian bond of their principal and turned it over to be delivered as a guardian bond; that the same was complete when they signed it, except as to the amount of the penalty, and that some one inserted the penalty and delivered the same to the clerk as a complete bond, and the clerk did not know any change in the bond had been made, held these facts are not inconsistent with a finding that the penalty was not in the bond when the defendants signed it, and that since signing they have never authorized any one to insert the penalty.

3.  When the defendants signed as sureties a bond, except the penalty and intrusted it to another for delivery, intending it to be used as a guardian bond, they gave such person implied authority to fill out the bond and deliver it in its completed form and when so delivered and accepted without notice or knowledge of the Clerk that any change had been made in it and the ward's fund thereby obtained and dissipated, they will be estopped to deny their obligation on the bond.

WALKER and CONNOR, JJ., dissenting.

*On Petition of Plaintiff to Rehear;* for former opinion, see 137 N. C., 355.

The action was instituted by Thomas S. Rollins, present guardian of James Blaine House, against F. C. Ebbs former guardian, and the sureties on his guardian bond to recover for default of the principal.   On the trial below at May term, 1904, of the Superior Court of HAYWOOD County, there was a verdict of the jury on issues submitted, and judgment on the verdict for the penalty of the bond, to be discharged on the payment of $4,666.66 2-3 with interest, the amount of the default.   On appeal to this court a new trial was awarded, the majority of the court holding that the verdict was inconsistent on material issues, the *Chief Justice* and *Associate Justice Douglas* dissenting.   See 137 N. C., 355.   A petition to rehear has been formally allowed and the case is again before the court on this order.

*Moore & Rollins,* for the petitioner;
*W. T. Crawford,* in opposition.

HOKE, J., after stating the facts.   On the trial below the jury rendered the following verdict:—

1. "Did defendants, I. N. Ebbs, M. L. Duckett, D. P. Plemmons, J. M. Rector and Jasper Ebbs make and deliver their bond in writing to the State of North Carolina for the benefit of James Blaine House, as alleged in paragraph 3 of the complaint?   Yes."

2. "Did defendant, F. C. Ebbs, as guardian of James Blaine House receive the sum of $7,000, property of his ward, as alleged is paragraph 4 of the complaint?   Yes."

3. "Did defendant, F. C. Ebbs, as guardian of James Blaine House, in violation of and in breach of said bond, use and appropriate to his own use the sum of $4,666.66 2-3 of his ward's money, as alleged in paragraph 6 of the complaint?   Yes."

4. "In what sum, if any, is the plaintiff or the relators damaged because of said breach of said bond?   In the sum

of $4,666.66 2-3 with compound interest from the 8th day of March 1900 until paid.

5. Was the paper writing or bond described in paragraph 3 of the complaint incomplete when delivered to the clerk of the Superior Court of MADISON County in that it contained no penalty, and in that the space where the penalty should have been written was left blank, as alleged in the further defense contained in the answer? No.

7. "Was the penalty $13,000 left out of the bond or paper writing described in paragraph 3 of the complaint because of the mistake or inadvertence of the clerk of the Superior Court, as alleged in the reply of the plaintiff? No."

9. "Was it the purpose and intention of the defendants, at the time of signing the paper writing introduced in evidence, that the same should be used and filed as a guardian bond by F. C. Ebbs as guardian of James Blaine House? Yes."

10. "Was the penalty inserted in the paper writing, purporting to be a bond, at the time Jasper Ebbs signed the same? No."

11. "Was the penalty $13,000 inserted in the paper writing, purporting to be a bond, at the time the defendant Plemmons signed the same No."

12. "Was the penalty $13,000 inserted in the paper writing at the time M. L. Duckett signed the same? No."

13. "Have the defendants, Jasper Ebbs, M. L. Duckett, D. P. Plemmons or either of them, since the signing of the paper writing or bond, authorized any one to insert the penaty $13,000 in said bond? No."

In the former opinion, a majority of the court held that according to the verdict on the last four issues the bond was void, and that such finding was inconsistent with the verdict on the first, fifth, seventh and ninth issues, which in effect declared it to be a valid and binding bond? It is undoubted law that if this verdict is necessarily inconsistent as to

material issues a new tral must be awarded, but a majority of the court are now of opinion, maintained by the Chief Justice in his full and forcible dissenting opinion, that the verdict is not inconsistent on any material question, and that the plaintiff should have a judgment in his favor, as heretofore entered in the court below. It is a settled principle that verdicts should be taken in their entirety, that all material facts found should be considered and liberally and favorably construed with a view to sustaining them, if it can be done. Thompson on Trials Sec. 2654.

A fair interpretation of this verdict establishes the facts that the defendants signed and sealed this bond, intending to make it the guardian bond of their principal, F. C. Ebbs; that they should turn it over to their principal or one of their co-sureties, or some one intrusted by them for the purpose, to be delivered as a guardian bond; that the same was complete in all respects when they signed it and turned it over for delivery, except as to the amount of the penalty; and that some one inserted the penalty and delivered the same to the clerk as a complete bond, and that the clerk was not aware, at the time he received and approved the same, that any change in the bond had been made. The fact that it was delivered by some one to whom they had intrusted it for delivery necessarily follows from the verdict of the jury on the first and ninth issues, that these defendants had caused the paper writing declared on to be delivered as a guardian bond, and intended it should be so considered and filed when they signed it.

This interpretation is confirmed by the testimony of the defendants which shows that I. N. Ebbs, a co-surety, and brother of the former guardian and also a notary public, carried the bond to the clerk complete in form with the penalty inserted and acknowledged and justified before himself as a notary public, by the principal and other sureties, and he acknowledged and justified before the clerk.

The court does not think that there is anything here inconsistent with the verdict on the last four issues to the effect that the penalty was not in the bond when the sureties signed it, and that, since signing, they have never authorized any one to insert the penalty. When these sureties signed the bond, except the penalty, and intrusted it to another for delivery, intending it to be used as a guardian bond, they gave such person implied authority to do what was necessary to make it a complete bond. They enabled their principal, in this way, to qualify as guardian and to take charge of the fund, and this end having been accomplished and the fund thereby obtained and dissipated, when called on for a reckoning, they will be estopped to show that it was not their bond. There was an implied authority to fill out the bond and deliver it in its completed form, and when it was so delivered and accepted, without notice or knowledge on the part of the clerk that any change had been made in it, the sureties who signed the bond under such circumstances will not be heard now to say that they are not bound by its provisions. It is no answer to this position to declare or prove that, since signing, they had never given any one authority to put in a penalty. They turned over the bond to the principal or some one for him, clothed him with apparent authority to fill up the bond, impose it on the clerk as a completed instrument and thereby obtain the fund.

In Murfree on Official Bonds, 168, the doctrine as to such instruments is stated as follows: "It is a well established general rule that irregularities in the execution of official bonds do not affect their validity unless they are known to the obligee. Among other irregular practices, that of executing bonds in blank by sureties falls within this rule. If a surety executes a bond of this character in blank and trusts it to his principal, the latter is his agent and not the agent of the obligee, and the surety is fully bound by the acts and omissions of the obligor acting as his agent." And the same

principle is set forth in general terms in the 2nd. Volume
of Cyc. p. 159: "If the party to an instrument intrusts it
to another for use, with blanks not filled such instrument so
delivered carries on its face an implied authority to fill up
the blanks necessary to protect the same; and, as between such
party and innocent third persons, the person to whom the
instrument is so intrusted must be deemed the agent of the
party who committed the instrument to his authority." Again
it is said in the same volume at p. 161: "This implied
authority to fill blanks is confined to such insertions as are
necessary to make the instrument perfect according to its
entire form and intended use." "This rule is founded" says
the same authority "not only upon that principle of general
jurisprudence which casts the loss, when one of the two
equally innocent persons must suffer, upon him who has put
it in the power of another to do the injury, but also upon that
rule of the law of agencies which makes the principal liable
for the acts of his agent notwithstanding the private in-
structions of the principal have been disregarded, when he
has held that the agent had a position of more enlarged
authority." This principle finds support in well considered
adjudications in this State and elsewhere. *Gwyn v. Patter-
son,* 72 N. C., 189; *Railroad v. Kitchin,* 91 N. C., 39;
*Humphreys v. Finch,* 97 N. C., 303.

In *Railroad v. Kitchin,* it is said that, "where the bond is
placed in the hands of a co-obligor for delivery without con-
dition or instructions and he subsequently erases the name of
one of the signers before delivering it to the obligee and
without his knowledge or consent, the bond is not vitiated.
In such case the co-obligor acts as the trusted agent of his
associate co-obligors, and his abuse of the trust in altering
the bond does not relieve them from liability of the same.
*Ashe, J.,* in delivering the opinion adds that it is sustained
on another principle, that where one of two persons must
suffer loss by default or mistake of a third person, he who

first reposed the confidence or by his negligent conduct made it possible for the loss to occur, must bear the loss."

In *Humphreys v. Finch, Smith, C. J.,* in upholding the principle here declared, quotes with approval two cases from the Supreme Court of the United States—*Dair v. U. S.,* 83 U. S. 1 and *Buller v. U. S.,* 88 U. S., 272. Both were cases of official bonds and are apt authorities for the position we here maintain. In *Dair's* case some of the sureties to an official bond were endeavoring to set up the defense that it was not to be delivered until executed by another surety, and it was held that such defense was not permissible to the surety. *Justice Davis,* in delivering the opinion said: "Sound policy requires that the person who proceeds on the faith of acts or admissions of this character should be protected by estopping the party, who has brought about this state of things, from alleging anything in opposition to the natural consequence of his own course of action. It is accordingly established doctrine that whenever an act is done or statement made by a party, which cannot be contradicted without fraud on his part and injury to others whose conduct has been influenced by the act or admission, an estoppel will arise." And the judge further says that "in the execution of the bond, the sureties declare to all persons, interested to know, that they were parties to the covenant and bound by it." In *Buller's* case this decision was applied to a case where every blank in an official bond was left in the form of a writing to be filled, and was filled by the principal in the scope of his apparent authority, and *Chief Justice Waite* in delivering the opinion said: "The printed form, with its blank spaces was signed by Butler (the surety) and delivered to Emory (the principal) with authority to fill the blanks and perfect the instrument as a bond. By inserting in proper places the amount of the penalty, Butler could have taken away from Emory the power to bind him otherwise than as specified. This however he did not do. Instead, he

ROLLINS v. EBBS.

relied upon the good faith of Emory and clothed him with apparent power to fill all the blanks in the paper signed in such appropriate manner as might be necessary to convert it into a bond that would be accepted by the government as security for the performance of his contemplated official duties. It is not pretended that the acts of Emory are beyond the scope of his apparent authority. The bond was accepted in the belief that it had been properly executed. There is no claim that the officer who accepted it had any notice of the private agreement. He acted in good faith, and the question now is which of two innocent parties shall suffer? The doctrine of *Dair's* case is that it must be Butler, because he confided in Emory and the government did not. He is in law and equity estopped by his acts from claiming, as against the government, the benefit of his private instructions as to his agent."

There are many decisions in other States to the same effect. *Fullerton v. Sturgis,* 5 Ohio,529; *State v. Young,* 23 Minn., 551; *McCormick v. Bay City,* 23 Mich., 457; *Brown v. Colquit,* 73 Ga., 60; *South Berwick v. Huntness,* 53 Me., 89; *Chicago v. Gage,* 95 Ill., 593; *White v. Duggan,* 140 Mass., 18; *Rose v. Douglas Township,* 52 Kan., 451. In this last case the decision is as follows: "If a person signs his name as surety to an official bond, which is blank as to the amount of the penalty, and then intrusts such bond to another, and the same is afterwards filled up and then presented by the principal or any one for him to the proper officers for approval, and is accepted as an official bond of the principal, held, that such bond so accepted is *prima facie* evidence that it was filled up or completed with the authority of all the parties thereto; and further that if such bond was afterwards filled up by inserting the amount of penalty therein without the authority, consent or knowledge of the surety, such surety cannot complain, because by his own act or negligence he en-

abled the principal or some one for him to have such bond approved, accepted and filed as an official bond."

In *McCormick v. Bay City, supra,* it is said that "where a person signs his name in blank as surety to an official bond and delivers it to his principal to have it completed and signed by others, and handed over to the proper authority, he makes that person his agent for the whole business, and is estopped and bound by his action without regard to any secret instructions as to the conditions on which it should be completed and filed." Further, "public officers, in receiving official bonds into their custody are not bound to hunt up sureties and make inquiry of them. They have a right, where such action has been had, to rely upon their genuine signatures, voluntarily affixed to a regular document conforming to law."

There is nothing in the principle here declared that conflicts with the general doctrine which obtains in this State, that an agent, to bind a principal under seal, must have authority conferred by a writing under seal, and a sealed instrument which is changed by an agent, who has no authority by writing under seal, has no force to bind a principal. The doctrine, in these very terms, was approved by *Chief Justice Smith* in *Humphreys v. Smith, supra,* where he upheld the instrument on the principle of equitable estoppel. Nor is there anything in the decisions of this State, cited in the former opinion, nor in any the court can find, which forbids the application of the principle to the facts of the case the court is now considering. In all of these, it appears by express statement or by fair intendment that the obligee of the sealed instrument knew of the defect in its execution, or they were conveyances of real estate where the defect occurred in the line of a grantee's title, and such grantee was thereby affected with notice. In *McKee v. Hicks,* 13 N. C., 379, the obligee knew that the bond was in blank and the same was filled out in his presence when he lent the money. *Hall, J.,*

in delivering the opinion said that "Whatever injustice may be done to the plaintiff in this case is attributable to his own oversight in taking a security for a debt which the law cannot recognize."

In *Davenport v. Sleight,* 19 N. C., 381, the defendant, desiring to buy a boat from the plaintiff, gave a sealed bond in blank to his agent and sent the agent to buy the boat. The plaintiff and the defendant's agent bargained, and having reached an agreement, the blank was filled in with the amount (evidently in the presence of the plaintiff). The bond was held void as a sealed instrument on the authority of *McKee v. Hicks.*

In *Graham v. Joseph Holt,* 25 N. C., 300, the defendant and one John Holt decided to execute their note to the plaintiff for the price of certain goods. The amount was contained in the inventory at John Holt's house, and neither of the three could remember it. The three being together, John Holt and the defendant executed a sealed note to the plaintiff, leaving the amount blank for John Holt to take home and fill up with the data which he had. This was done by him, and the bond delivered to the plaintiff. Here, also, the plaintiff knew of the defect.

In *Blacknall v. Parish,* 59 N. C., 70, the defendant desired to sell some land, drew a deed and delivered it, signed and sealed, to an agent, with the bargainee and the price left blank. The agent made a sale to the plaintiff at a reasonable price, filled in the blank with the name of the plaintiff and the price, both the "plaintiff and the agent supposing that the instrument thus made was a good deed."

In *Cadell v. Allen,* 99 N. C., 542, a deed for real estate was executed by one Cuthbertson under a power of attorney from Stephen and Thomas Lacy. The power of attorney was without seal, the defect was one in the line of the grantee's title, and he was affected with notice.

In *Bland v. O'Hagan,* 64 N. C., 471, it appears by fair

intendment that the grantee knew of the defect, certainly there is nothing to show the ·contrary, and in *Barden v. Southerland,* 70 N. C., 528, which cites this last case as authority, it appears by express terms that the obligee of the amount knew that the amount was filled in by an agent acting under parol authority.

The court has thus far found no case in this State which forbids the application of equitable estoppel to the facts established by this verdict.

Several of the authorities cited in support of the present opinion go to the extent of holding that where an official bond has been executed, knowing that there are blanks in it to be filled by inserting things necessary to make it a perfect instrument, the person who signs and seals under such circumstances shall be considered as agreeing that these blanks may be filled after he has executed the bond, and if the surety, relying on the good faith' of his principal, shall permit him to have possession of the bond signed in blank, the surety will.have clothed the principal with real authority to fill the blanks at his discretion in any proper manner consistent with the nature of the obligation. And this was no doubt in the mind of *Justice Douglas* when he stated in his dissenting opinion "that the bond is binding because it is a statutory bond, and, having been made and delivered for the purpose of carrying out the provisions of the statute, carried with it the inherent authority to insert such amount of penalty as would meet the statutory requirment." So stated, the doctrine would uphold the bond, even if the penalty required by the statute had been filled in by the officer who took it. But the court does not decide this question here, as the facts of this case do not present it.

The court is of opinion that the defendants are estopped to deny their obligation on the bond as filed and accepted by the clerk; that the verdict is not inconsistent on any material

ROLLINS *v.* EBBS.

question, and that the original judgment of the court below be

Affirmed.

Petition Allowed.

WALKER, J., dissenting. When this case was before us at a former term, we held that the findings of the jury were inconsistent and that we could not determine the rights of the parties without a more definite verdict. The jury found that the penalty was not inserted in the bond at the time the sureties signed it, and that they had not since authorized any one to insert the penalty of $13,000 which was in the bond when it was delivered to the clerk. The majority of the court now think that this finding does not exclude the idea of an implied authority to insert the penalty, in veiw of the answers of the jury to the other issues. There is no other answer from which an implied authority may be inferred that would not also and just as well warrant the inference of express authority. When the jury found that the sureties gave no authority, the law construes their verdict to include every kind of authority, for there is nothing to restrict it to one kind to the exclusion of another. It is presumed that the court instructed the jury as to what would be necessary to constitute authority to fill the blank in the bond, and also explained the law as to express and implied authority, and when the jury responded that no authority had been given, they could only mean that no authority of any kind known to the law had been given, and the finding therefore included both express and implied authority.

The plain meaning of the last issue and the answer thereto cannot be changed by drawing any inference from the answer to the first issue as to what the jury intended to find. It would be a more natural deduction that the jury intended by the first issue to say that a paper writing in the form of a bond was actually delivered by Ebbs to the clerk, and in

view of the other issues submitted and the answers thereto, that is, I respectfully think, the only reasonable construction of the finding. The charge was not sent up and therefore we are not informed what instructions were given by the court on the first issue, but it is more than likely that the judge directed a verdict on that issue and then submitted the other special issues in order to ascertain the facts, so that the questions of law might be fairly presented and the liability of the defendants determined. I can account for the conflicting findings in no other way.

It is now held that there was an implied authority to insert the penalty and deliver the bond to the clerk in its completed form, and that if the latter accepted and acted upon it under these circumstances without any knowledge of the real facts, the sureties cannot be heard to question the validity of the bond under the doctrine of equitable estoppel. There cannot be any implied authority to do a thing in a way positively forbidden by the law. Authority to execute a bond in behalf of another or to perfect one in form when essential parts have been omitted and deliver it, must be given under seal. This is conceded. How then can an authority be implied to fill the blank in a manner contrary to this rule? What is meant, I suppose, is that if the paper writing was entrusted to the principal obligor, F. C. Ebbs, and he handed it to some one else who inserted the penalty and then delivered it in its completed form to the clerk, and the latter had no knowledge of the facts, but received and acted upon it as a perfect and valid bond, it being regular on its face, the doctrine of equitable estoppel applies and the defendants are bound although Ebbs abused the trust and confidence reposed in him. This is the ground upon which the court now rests its decision, but it is clear to me that the doctrine has no application to the case. Whether the validity of the bond is sustained upon the doctrine of equitable estoppel or upon that of agency, it is essential to the application of either doctrine that the party

claiming the benefit of it should have been misled to his prejudice and he must have been free from negligence. Discussing this question in *People v. Bostwick,* 32 N. Y., 452, the court says: "The principle that where one of two innocent parties must suffer, he who has put it in the power of a third person to commit the fraud, must sustain the loss, is not one of universal application, if the language be taken in a proper sense. In such cases, the one who claims the benefit of the rule must not himself be guilty of negligence." Leading text writers thus state the rule: "The party relying on the estoppel must show that he was ignorant of the facts and that such ignorance was not chargeable to his neglect." Fetter's Equity, 48 (c.) An equitable estoppel does not operate in favor of a person chargeable with fraud, misconduct or negligence." Eaton's Eq. 177. See also Beach Mod. Eq. Jur. Sec. 1108; Pomeroy's Eq. Jur. Sec. 810; *Odlin v. Gove,* 41 N. H. 465; *Moore v. Bowman,* 47 Ibid., 494. The same principle is recognized and stated in *Dair v. U. S.,* 16 Wall 1, which is cited by the court. It is there said that the party claiming the benefit of the estoppel must not himself be at fault. If he neglects to make proper inquiry when such inquiry would have disclosed to him the exact condition of things, the estoppel will not avail him, as in that case he would not be an innocent party. In Baylies on Sur. & Guar. 212, the principle is stated in concrete form as follows: "But while the courts recognize the principle that where a fraud has been perpetrated from which one of two innocent parties must suffer, he who put it in the power of a third person to commit the fraud must bear the loss; they require that the party invoking this principle must be without fault himself; that where the instrument upon which it is sought to charge the surety is an official bond, or a bond taken and approved in the course of judicial proceedings, the principle does not apply as against the surety, that the officer taking

and approving the bond does not exercise due diligence unless the bond is signed in his presence and. delivered to him by all the obligors, or by some one having authority in writing properly attested, to bind them; that if such diligence is not observed, the officer must bear the consequences of his neglect; and if the negligence of the officer involves loss to individuals for which the officer is not able to respond, the loss ought not to be thrown on those who have not ·consented to bear it." This view of the law is cogently stated by *Brickell, C. J.,* for the court in *Guild v. Thomas,* 54 Ala., 414, where, after approving the doctrine as laid down in Baylies, *supra,* it is said: "The principle that where a fraud has been perpetrated from which one of two innocent parties must suffer he who has put it into the power of a third person to commit the fraud must bear the loss, is admitted. If it has any just application in this case, as in all cases to which it is applied, the party invoking it must be without fault himself. The appellant was in fault in not inquiring into and ascertaining whether the principal was authorized to make an unconditonal delivery of the bond. He trusted to the representations of the principal, and this misplaced trust is the immediate cause of the loss he must bear, if the principal cannot respond to his liability." If it were not sustained by the highest authority, the doctrine, that no one who has himself been in fault, can avail himself of an equitable estoppel, is so plainly just and right that no authority would be needed in its support. If a party has been negligent in the. performance of his duty, neither he nor any other person whom he represented can claim that he is innocent of any wrong and thereby visit the consequences of that neglect upon another, although the latter. may have put it in the power of a third person 'to mislead him and he was actually misled, the consequent injury, if any, being the result of his own want of care or of the failure to perform the duties enjoined upon him by the law. *Guild v. Thomas, supra.* If these princi-

ples are applied to the facts of this case, what will be the necessary conclusion? The penalty of a guardian bond is not fixed at a certain sum, but the statute provides (1) that it'shall be at least double the value of all the personal property and of the rents and profits issuing from the real estate of the infant, which value the clerk of the Superior Court shall ascertain by the examination of the applicant for letters of guardianship or of any other person; (2) the bond must be acknowledged before the clerk, and (3) it must be approved by him. Code Sec. 1574. These requirements have an important bearing upon the principle now brought into this case, and they show most clearly that it can have no proper weight or influence in its decision. With reference to the first of these requirements it may be asked, how can any authority to fill the blank in the bond be implied when the holder of it could not under any circumstances have such a power, as it is given to the clerk alone to ascertain and fix the amount of the penalty, and for the very good reason of affording the infant adequate security as against the default of his guardian. The penalty could not be inserted in the bond until the clerk had first made the preliminary investigation and ascertained what the amount should be.

Notwithstanding this express provision of the statute, it is suggested that Ebbs could insert the penalty by virtue of implied authority to do so. In other words, that he could exercise an authority conferred by statute on some one else, or could exercise a statutory power in his private capacity. The very fact that he brought the bond to the clerk in an apparently completed form was cogent proof to the latter, or should have been, that there was something wrong, as the clerk well knew that the penalty could not be inserted in the bond until the amount thereof had been ascertained in the manner prescribed by the statute, and this was enough to put him on his guard.

Before passing to the next point, it may be said also in

regard to this requirement that if the defendants even placed the bond in the hands of F. C. Ebbs, their alleged principal, or in the possession of any one else, with the intent that it should become the guardian bond of Ebbs, the only authority that could be implied (if authority can be given in such a case otherwise than by an instrument under seal), was that the bond should be filled up according to the law, that is, by the clerk in the manner provided in the statute, and they had the right to suppose that this would be understood by everybody and especially by the clerk who is charged with the duty of ascertaining the amount of the penalty to be inserted. How can the clerk be termed an innocent third person who was deceived by appearances, when he must have known that nobody possessed the authority to fix the penalty but himself. In this respect our case differs materially from those cited in the opinion. They will be found on examination to be cases dealing with private bonds, or with official bonds where the penalty was fixed at a sum certain, or with official bonds signed with a blank space left for the name of the obligor which was afterwards filled by some third person. Those cases are manifestly different from ours, as there was nothing in them to excite inquiry on the part of the officer, and surely nothing of so pronounced a character as the assumption by another of authority which belonged solely to him, nor did it appear in them that the law required him to take the acknowledgement of the obligors. The decision in each one of those cases proceeded upon the idea that on its face the bond in question had every appearance of regularity and that, if there had been thereon any thing indicating irregularity, the principle of equitable estoppel would not have applied.

But this is not all that can be said in this connection. The statute further requires that the clerk shall himself take the acknowledgement of the bond. He had no right to receive, and certainly not to accept it as a perfect bond until he had

done this.   If he had performed his duty in this respect,
what would he have discovered? Why, of course, that the de-
fendants had signed the paper writing in blank and that it
was not their bond, as I. N. Ebbs had no authority to fill the
blank.   How apt are the authorities we have cited when con-
sidered in connection with these requirements of the statute.
They hold that the officer should require acknowledgement,
while our statute expressly provides for it.   It is not con-
tended that an omission to comply with directory provisions
will invalidate a bond, but my sole purpose now is to show
that the clerk is not an innocent party and is not therefore
within the protection of the doctrine of equitable estoppel.
He was negligent at every turn and acted in open violation
of the law.

The rule upon which the decision of the court is based has
been thus formulated: "An obligee may properly accept,
without inquiry, an instrument perfect in form and execu-
tion, which comes to him from the person who should have
possession of the instrument for the purpose of such delivery;
that the surety who executed the instrument and placed it in
the usual channel for delivery cannot limit the general au-
thority by a condition, of which the obligee has no notice;
that if the condition is disregarded and a fraud accomplished,
he who has clothed his principal with the semblance of a
general authority to make the delivery, must stand the hazard
he has incurred." *Spitler v. James,* 32 Ind. 202.   But can
it be said that this instrument was "perfect in form and exe-
cution," when the clerk was aware that he had not fixed the
penalty and that sureties had not acknowledged it, two things
which are made by the statute essential to its perfectness.
Nor did the legislature have in view the delivery of an in-
strument of this kind by any third person, that is, such a de-
livery as is meant in the statement of the rule just quoted,
and which would be sufficient in other cases to make a per-
fect bond—delivery being the final essential act or requisite

in the making of a good bond. This is so for two reasons, first, because the bond could not be made complete until the clerk had fixed the penalty and, second, because the presence of the obligors themselves is contemplated by the statute, as they must be there to acknowledge the execution of the bond before the clerk. This requirement of the law was intended to prevent just such a controversy as in now presented. It was necessary for the obligors to be there and acknowledge the bond, because they could not know the extent of their liability until the clerk had ascertained the value of the property and fixed the amount of the penalty. It was a provision enacted for the benefit of the obligors and at the same time for the absolute security of the infant's estate. Speaking of a common practice said to obtain for clerks to take bonds in a certain irregular way, the court in *Gilbert v. Anthony*, 1 Yerger 69, said: "If such a practice had generally prevailed and no injurious consequences were to be apprehended from its continuance, it might perhaps be countenanced; but it is not only an illegal but a dangerous practice, and there will not be a more favorable time to correct it than the present. All officers, and especially those concerned in the administration of justice, would do well to perform their duties in the manner which the law has prescribed instead of endeavoring to discover one more convenient and eligible in their opinion; by so doing much litigation would be prevented, much unnecessary consumpton of the time of the courts avoided, and the officers themselves exempted from liabilities to which they will always be otherwise exposed."

The doctrine of equitable estoppel requires that both parties should be equally innocent, as where one against whom the estoppel is set up has by misplaced confidence made that to appear which did not in fact exist, and the other being himself without fault, has been misled by what was thus made to appear. One of the essential elements of the estoppel is that the party claiming the benefit of it should not

be in fault, and when this is the case, the party who reposed the confidence is bound by what was done although he did not authorize it, because he relied upon the simple assurance that another will do an act which he knows may be defeated by various accidents, and he must therefore take the risk of such assurance being fulfilled. *Barnes v. Lewis,* 73 N. C., 138. While he may not have authorized the act, he has put it in his power to do the act, and for any abuse of the power which results in misleading an innocent party he must be held liable. But he will not be held responsible for any results which the other party could have prevented by the exercise of reasonable care, and especially by the performance of a duty positively imposed by statute. This would be an unreasonable and unwarranted extension of the doctrine and a departure from the reason upon which it is founded.

It was not necessary that the clerk should have had actual notice of the facts. If he omitted to do that which would have given him notice, it is in law the full equivalent of actual notice. This court has said that constructive notice arises from the means of knowledge, and notice is presumed when the party to be affected by it has such means in his possession or they are available...*Bunting v. Ricks,* 22 N. C., 130; *Hulbert v. Douglas,* 94 N. C., 122; 2. Pomeroy Eq. Jur. Sec. 604 *et seq.* If the clerk had required the obligors to acknowledge the execution of the bond and had otherwise discharged his duty, the facts would have been fully disclosed to him, and having failed to do so, the law imputes to him knowledge of what he might thus have learned. 2 Pomeroy *supra,* 610. Another element necessary to create an equitable estoppel is that the party estopped must intend, or be in a position to reasonably anticipate, that his conduct or representation will be acted on by the party by or through whom the estoppel is asserted. Fetter Eq. 48 (d.) How could this be the case when it was the duty of the clerk to fix the amount of the penalty and to take the acknowledgement of

the obligors? How could the defendants foresee that the clerk would do what he should not have done and what he was forbidden by the statute to do?

It is not necessary that I should controvert the general principles stated in the opinion of the court, but only the conclusion drawn therefrom, which I have attempted to show is not warranted, in view of the special provisions of our statute (Code Sec. 1574) which take this case out of the operation of those principles. I must think that the majority were inadvertent to the statutory requirements, for nothing is better settled in the law than that the injury must be the proximate result of the conduct depended upon to create the estoppel, and that the party claiming the benefit of it must not himself have been in fault but in the exercise of reasonable care and due diligence under all the circumstances. Eaton Eq. Sec. 61, p. 173; *Bank v. Hazard,* 30 N. Y., 230. In *Bank v. Morgan,* 117 U. S., 109 it is said: "In respect to persons equally innocent, when one is bound to know and act upon his knowledge and the other has no means of knowledge, there seems to be no reason for burdening the latter with any loss in exoneration of the former." In our case the clerk had at least the "means of knowledge." It is also said in that case that negligence will deprive a party of the benefit of the estoppel, and in another part of the opinion the court uses this language "If the defendant's officers, upon paying the returned checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted an examination of his accounts." In that case will be found an able exposition of the law relating to equitable estoppels where there has been mutual negligence. The requirement that the party who pleads the estoppel should be free from fault applies more strongly where the fault consists in the breach of an official duty than it does where there is merely negligence.

While I do not question the correctness of the principles stated by the court, it must be admitted the courts are not by any means agreed that the doctrine of equitable estoppel applies to the filling of blanks in bonds, some of those who hold that it does having either virtually adopted the principle of *Texhira v. Evans,* 1 Anstr. 228, which this court has repudiated, or having applied to bonds the rules concerning commercial paper. *White v. Duggan,* 140 Mass. 18. The subject is fully and ably discussed and the authorities cited and commented on in *Walla Walla v. Ping,* 1 Wash, (N. S.) 339.

I do not think it necessary to discuss the effect of section 1891 of The Code, as the court in its opinion does not rely on it or even refer to it, and it is apparent from its terms that it does not apply to a case like this, but to bonds wherein the amount of the penalty varies from that fixed by the law, being either more or less than that amount.

The plaintiff in my opinion has a perfectly plain and adequate remedy by which to recover what is alleged to be due to his wards from their former guardian, without invoking the doctrine of equitable estoppel which can have no application to the case for reasons already stated. I do not see how he can be injured by a new finding of the facts, upon proper issues submitted which will not be open to construction and will not require a resort to inference as to the meaning of the jury.

CONNOR, J. concurs in the dissenting opinion.